## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **R.D.,** | : | **Civil No. 3:16-CV-1056** |
| | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SHOHOLA CAMP GROUND** | : | |
| **AND RESORT,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM ORDER

### I.    Factual Background

This case involves allegations of battery, negligence and negligent hiring and supervision in connection with an episode of alleged sexual abuse which occurred in 2007 when the then-minor plaintiff, R.D., was participating in a camping excursion conducted by the defendant.  In the course of this excursion it is alleged that another camper, identified as N.S., sexually assaulted the plaintiff, and may have had inappropriate sexual contact with two other minors who shared a tent with the plaintiff and N.S. during this excursion.  These two other minors are identified in these proceedings as G.M. and E.J.

On March 7, 2017, this matter was referred to the undersigned for pretrial management and resolution of discovery disputes. Since that time we have addressed, and are in the process of addressing, numerous discovery disputes between these parties. One of these discovery issues relates to a dispute regarding whether, and to what extent, the plaintiff's counsel may have waived the work-product privilege with respect to an investigative interview which the plaintiff's private investigator conducted with E.J. on February 24, 2017.

These waiver issues arose in the course of a deposition of G.M. which was conducted on March 7, 2017. (*In camera* submission, Ex. E.) In the course of this deposition, G.M. testified about this 2007 camping excursion, and categorically denied any knowledge of any sexual contact between N.S., R.D., or any other camper in the tent. (Id.) G.M. also denied recalling that anyone else was in the tent besides himself, R.D., and N.S. (Id.) In the course of cross examining G.M., the plaintiff's counsel played an excerpt from a videotaped interview which the plaintiff's private investigator had conducted with another camper, E.J., on February 24, 2017. In this videotape interview excerpt, E.J. identifies himself as the fourth occupant of the tent during this 2007 excursion, along with N.S., R.D., and G.M. E.J. also described sexual activity which took place in the tent during this excursion. Specifically, E.J. describes a game of Truth or Dare which was initiated by N.S., and culminated in an act of anal intercourse between N.S. and

E.J.   (<u>Id</u>.)   The plaintiff's counsel then used this selective disclosure of the investigative interview to question G.M. at some length regarding the completeness and accuracy of his recollection of these events.   (<u>Id</u>.)

In the wake of this deposition, the defendant has moved for the disclosure of the entirety of the videotaped investigative interview of E.J.   (Doc. 70.)   While acknowledging that such investigative interviews are typically covered by the work product privilege, the defendant argues that plaintiff counsel's use of excerpts of the interview during the deposition of G.M. now constitutes a waiver of the privilege, justifying wholesale disclosure of the interview in its totality.   R.D.'s counsel opposes this request, contending that the disclosure of some portion of an interview encompassed by the work product privilege does not amount to a waiver of the privilege as to the entire interview.

At the court's direction, the plaintiff has provided for our *in camera* inspection:   (1) the excerpts of the videotape interview played at G.M.'s deposition; (2) the entirety of the interview; (3) some investigative notes from the interview; (4)  and the deposition of G.M., in video and transcript form.   We have reviewed these materials *in camera*, weighing questions of work product privilege waiver in light of the guiding legal principles announced in <u>In re Teleglobe Commc'ns Corp.</u>, 493 F.3d 345, 361 (3d Cir. 2007).   Having conducted this review, for the reasons set forth below, we will GRANT this motion to compel, in

part, and DENY the motion, in part. Specifically, we will direct the disclosure of only those portions of the interview of E.J. which provide a complete background, and context on E.J.'s recollection of the specific events that allegedly transpired in the tent shared by these boys some ten years ago in 2007.

## II. Discussion

Issues relating to the proper scope and nature of discovery rest in the sound discretion of the court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery, therefore, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v.

<u>Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion extends to resolution of questions regarding the application of the work product privilege. "The work-product doctrine is embodied within Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that 'a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial' unless otherwise discoverable or a party shows substantial need for the material. Fed.R.Civ.P. 26(b)(3). The doctrine is, in essence, a recognition that a lawyer requires a 'certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.' <u>Hickman v. Taylor</u>, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The doctrine thus is intended 'to protect material prepared by an attorney acting for his client in anticipation of litigation.' <u>United States v. Rockwell Int'l</u>, 897 F.2d 1255, 1265 (3d Cir.1990); <u>see also</u> <u>United States v. Nobles</u>, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ('At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.')." <u>Craig v. Rite Aid Corp.</u>, No. 4:08-CV-2317, 2012

5

WL 426275, at *5–6 (M.D. Pa. Feb. 9, 2012), on reconsideration in part, No. 4:08-CV-2317, 2012 WL 1079472 (M.D. Pa. Mar. 30, 2012).

As a general rule, private investigator interviews conducted on behalf of counsel in preparation of litigation are encompassed by the work product privilege. Therefore, disclosure of these interviews typically may not be compelled, provided that the witness is available to be deposed. Dempsey v. Bucknell Univ., 296 F.R.D. 323, 329 (M.D. Pa. 2013).[1] The privilege, however, can be waived and the privilege takes flight when otherwise confidential information is disclosed. The question before us involves defining the proper scope and dimension of any waiver which has transpired in this case.

In some instances, parties may waive the privilege by selectively disclosing portions of privileged materials to some third parties. When this takes place, the issue then becomes assessing the proper scope of the waiver. In this regard, the

---

[1] In their response to this motion the plaintiff opposes the request for disclosure of any further portions of E.J.'s interview by noting, in part, that G.M. was interviewed by the defense but that no report of that interview has been disclosed to the plaintiff. This argument confuses the scope of the privilege with the concept of waiver. We agree that both interviews of E.J. and G.M. would have initially been cloaked in privilege. Dempsey v. Bucknell Univ., 296 F.R.D. 323, 329 (M.D. Pa. 2013). The question before us is not one of privilege, but rather entails issues of waiver of that privilege. In the instant case, there has been a partial waiver of the privilege as to E.J.'s interview since portions of that interview were disclosed. The same cannot be said of any interview conducted of G.M. This salient difference distinguishes these two circumstances.

6

controlling legal benchmarks were aptly summarized by the United States Court of

Appeals for the Third Circuit in the following terms:

> Disclosing a communication to a third party unquestionably waives the privilege. A harder question is whether the waiver also ends the privilege as to any related but not disclosed communications. In answering this question, our touchstone is fairness. See Tackett v. State Farm Fire & Cas. Ins. Co., 653 A.2d 254, 259 (Del.1995); see also Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1426 n. 12 (3d Cir.1991). When one party takes advantage of another by selectively disclosing otherwise privileged communications, courts broaden the waiver as necessary to eliminate the advantage. Zirn v. VLI Corp., 621 A.2d 773, 781-82 (Del.1993) ("The purpose underlying the rule of partial disclosure is one of fairness to discourage the use of the privilege as a litigation weapon."); see also Rice § 9:31. Extending the waiver, however, is not a punitive measure, so courts do not imply a broader waiver than necessary to ensure that all parties are treated fairly. See Rice 9:31. Moreover, when the disclosure does not create an unfair advantage, courts typically limit the waiver to the communications actually disclosed. See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 24-25 (1st Cir.2003); cf. Westinghouse, 951 F.2d at 1427 n. 14.

In re Teleglobe Commc'ns Corp., 493 F.3d 345, 361 (3d Cir. 2007) (footnotes

omitted). Thus, when one party makes a tactical, selective waiver of the privilege

as to a portion of some material it is incumbent upon the court to ensure that the

waiver also encompasses any additional information which needs to be disclosed in

order to avoid any unfair litigative advantage. However, given the importance of

the privilege any expansion of a partial waiver should be limited and carefully

defined and should only encompass that additional information which ought in

fairness to be disclosed.  Therefore, a limited waiver of the privilege by selective disclosure of some information should not be transformed into a wholesale waiver by the courts.

This limited waiver analysis is intended solely to avoid permitting a party from inappropriately using the privilege as both a sword and a shield.  In this setting, as we assess claims of unfairness flowing from a selective waiver of the privilege, we are mindful that:  "Unfairness may occur 'when a party attempts to use the communication in a litigation or where the party 'makes factual assertions, the truth of which can only be assessed by examination of the privileged communications.'  Net2Phone, Inc. v. Ebay, Inc., No. CIV. A. 06-2469 KSH, 2008 WL 8183817, at *10 (D.N.J. June 26, 2008) (citing In re Intel Corp. Microprocessor Litig., 258 F.R.D. 280 (D. Del. 2008))."  Dalmatia Imp. Grp., Inc. v. FoodMatch, Inc., No. CV 16-2767, 2016 WL 5930900, at *3 (E.D. Pa. Oct. 12, 2016).  Under this analysis " '[t]he widely applied standard for determining the scope of a waiver of . . . privilege is that the waiver applies to all other communications relating to the same subject matter.'  Ft. James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed.Cir.2005); see also Seagate, 497 F.3d at 1372."  Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc., 707 F. Supp. 2d 463, 471 (D. Del. 2010).

8

Judged by these standards, we note that the selective disclosure of the investigative interview of E.J., which occurred in the course of G.M.'s deposition was related to a specific topic: E.J.'s recollection concerning sexual contact and activity between E.J., N.S., G.M. and R.D. which may have occurred in the tent shared by these four boys during a camping excursion in 2007. With respect to this incident the excerpt of the videotaped interview which was played at G.M.'s deposition, and as to which it is undisputed that any privilege has been waived, comprised approximately 9 minutes and 38 seconds in duration and related exclusively to E.J.'s factual narrative of his recollection of the events which transpired of a sexual nature in this tent in 2007. (*In camera* submission, Ex. A.)

We have now conducted a comparative analysis of this excerpt with the entirety of the videotaped interview of E.J., which has been provided to us as Exhibit B of the plaintiff's *in camera* submission. In conducting this analysis we have focused upon whether there are other communications relating to the same specific subject matter which ought in fairness to be disclosed given the waiver of the privilege which has occurred here. While we find that a wholesale disclosure of the interview in its entirety would be inappropriate, we have concluded that three additional excerpts from the interview should, in fairness, be disclosed. These three additional excerpts relate to the specific incident recounted by E.J. in the portion of the interview which has been disclosed, and in the court's judgment

the disclosure of these three additional excerpts is necessary in order to provide a complete context for E.J.'s recollection of these events, and avoid any incomplete impressions regarding what E.J. recalls of this particular episode.

The entire videotape interview comprises approximately 1 hour and 58 seconds.  The excerpt of the interview which has been previously disclosed by the plaintiff's counsel began at approximately minute marker 15 and concluded at approximately minute marker 26.   In our view, nothing which preceded the disclosed portion of the interview is so closely associated with the events described by E.J. that this limited waiver would compel the release of these initial portions of the videotaped interview.   There are, however, three limited excerpts from the videotaped interview that take place later in the course of the interview which in our judgment directly relate to the disclosed portion of the interview, contain a recounting of E.J.'s recollection of this particular event, and would be necessary for a full, complete and completely fair understanding of this witness' recollection.

The first of these excerpts immediately follows the disclosed portion of the interview, which as we previously noted appears to conclude at approximately minute marker 26 in the interview.   Immediately following this disclosed portion of the interview E.J. recounts additional information directly relating to his recollection of these events.   This discussion is so closely intertwined with the preceding statements that we conclude that the partial waiver made by the plaintiff

would embrace this conversation as well.  The additional portions of the interview which directly relate to these matters can be found between minute markers 26 and 34 on the videotape provided to the court.

E.J. and the investigator then return to this specific topic on two more occasions during the course of the interview.  First at approximately minute marker 39 minutes and 20 second, E.J. engages in a brief discussion of his recollection of these events.  That discussion continues for approximately one minute up through minute marker 40.  Finally, at approximately minute marker 55, E.J. and the investigator return to a conversation concerning the full scope of E.J.'s recollection of this particular incident.  This final conversation continues until approximately the 60 minute marker in the video.

These limited excerpts relate directly to the subject matter that was disclosed by plaintiff's counsel during the deposition of G.M.  These excerpts provide essential context and additional detail to E.J.'s recollection of this episode, and the three excerpts, taken together, are inextricably intertwined in a way which leads us to conclude under Teleglobe and its progeny that the waiver of the privilege which has occurred here also compels an additional measured disclosure of this information.

An appropriate order follows:

## III.   <u>Order</u>

For the reasons set forth in the accompanying Memorandum, the defendant's motion to compel disclosure of the interview of E.J. (Doc. 70.) is GRANTED, in part, and DENIED, in part.  Specifically, we will direct the disclosure of only those portions of the interview of E.J. which provide a complete background, and context on E.J.'s recollection of the events that allegedly transpired in the tent shared by these boys some ten years ago in 2007, as described in this Memorandum Order; that is, the excerpts relating specifically to this incident which can be found at minute markers 26 through 34, 39 through 40, and 55 through 60 of the videotaped interview.  Disclosure should take place on or before April 10, 2017.

So ordered this 30th day of March, 2017.


*<u>S/ Martin C. Carlson</u>*
MARTIN C. CARLSON
United States Magistrate Judge