# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| "R.D.," | : | Civil No. 3:16-CV-01056 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| SHOHOLA, INC., | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.     INTRODUCTION

Pending before the court is a motion for summary judgment, (Doc. 202), filed by the defendant, Shohola, Inc. This motion arises out of allegations that R.D., a camper entrusted to the defendant's care in 2007 suffered sexual abuse at the hands of a fellow camper.

Shohola is a corporation which is organized and exists under the laws of Maryland, and operates a summer camp in Pennsylvania. The plaintiff, R.D., brought several claims against Shohola arising out of an alleged sexual assault he suffered at the hands of another camper on a trip to Cape Cod organized by Shohola in 2007. R.D. asserts claims of direct negligence, negligent supervision, battery, and negligence *per se* against Shohola, alleging that Shohola is liable for

the harm R.D. suffered when he was sexually assaulted. For the reasons set forth below, we will deny the motion for summary judgment with respect to the direct negligence claim, and grant the motion in all other respects.

## II.     <u>**BACKGROUND**</u>

In July 2007, R.D., who was a minor at the time, attended an overnight camping trip to Cape Cod, Massachusetts, which was organized by Shohola. (Doc. 27, ¶ 12). R.D. alleges that Shohola marketed the camp as being a safe and encouraging environment for campers and having one of the best supervision ratios in the camping industry with a nearly two-to-one camper to counselor ratio. (Doc. 27, ¶ 9(a)-(d)). Despite these assurances, only four counselors accompanied the twenty-two campers who attended the Cape Cod trip in 2007. (Doc. 202-1, at 4).

R.D. was placed in a tent with three other campers, one of whom was a few years older than the rest of the boys. (Doc. 27, ¶ 13). This was different than the camp's ordinary procedure of sorting the boys into tents based on their ages. (Doc. 208, at 3). It is alleged that the boys were almost completely unsupervised in their tents, and that none of the staff members checked in on the boys before or after "lights out." (<u>Id.</u>) On the second night of the trip, the oldest camper in the tent, N.S., allegedly initiated a game of "truth or dare," during which he dared the younger boys to perform sex acts. (<u>Id.</u>, at 4). R.D. claims that N.S. anally penetrated him and another boy, E.J., and fellated the third boy, G.M. (<u>Id.</u>, at 1).

N.S. instructed the other boys to turn their flashlights off while he performed the sexual dares. (Id., at 4). R.D. alleges that he was able to scream, which caused N.S. to stop assaulting him. (Id.) Despite the yelling and the flickering of the flashlights, no staff member checked on the boys in the tent that night. (Id.)

R.D. filed the instant suit against Shohola on June 3, 2016. (Doc. 1). The second amended complaint (Doc. 27) asserts four claims against Shohola arising from the alleged sexual assault that occurred on the Cape Cod trip: Count I alleges that Shohola was directly negligent because it breached a duty of care to its campers, specifically R.D., to supervise and protect them; Count II alleges a state law battery claim; Count III alleges that Shohola was negligent in hiring, supervising, and retaining its employees; and Count IV alleges negligence *per se*, based on a duty to report sexual abuse under the Child Protective Services Act, 23 Pa.C.S. § 6311. The parties have engaged in extensive discovery, and after roughly two years of somewhat contentious discovery disputes, Shohola filed the instant motion for summary judgment. (Doc. 202).

In its motion, Shohola asserts that it is not liable to R.D. in negligence because it did not have a duty to protect him. (Doc. 202-1, at 7). Shohola argues that, to state a claim for negligence, R.D. must show that the camp knew of N.S.'s dangerous propensities for sexual violence. (Id.) Further, Shohola claims that it cannot be liable on the negligent supervision and battery claims because N.S. was a

camper, not an employee of the camp. (Id., at 17). Lastly, Shohola contends that it

had no duty to report abuse under the Child Protective Services Act ("CPS Act")

because it did not know of the alleged abuse until the filing of the instant lawsuit,

and thus it cannot be liable under a negligence *per se* theory. (Id., at 18). The

motion has been fully briefed (Docs. 202-1, 208, 221), and the court heard oral

argument on November 2, 2018.[1] Thus, the motion is ripe for resolution.[2]

### III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."   Fed. R. Civ. P. 56(a).   In evaluating a motion for summary

judgment, a court must determine "whether the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits show that there is no genuine

issue of material fact and whether the moving party is therefore entitled to

---

[1] We commend all counsel for the high quality of this oral argument.

[2] The plaintiff's brief in opposition requests that this court stay its decision on the motion until discovery is complete—mainly, the deposition of the defendant's investigator. (Doc. 208, at 6-7). The deposition of Investigator Trobe has been narrowly limited by this court to the narrow issue of whether Trobe attempted to intimidate or influence the testimony of non-party witnesses E.J., G.M., and Massachusetts State Police Detective Matthew Cosgrove. (Doc. 149, at 10-11). The defendant appealed this court's order to the Court of Appeals for the Third Circuit, and the appeal is currently pending in the Third Circuit as of the date of this memorandum. The defendant has conceded, only for the purposes of the summary judgment motion, that R.D. was sexually assaulted. Thus, the testimony of Investigator Trobe relating to the possible intimidation of non-party witnesses is not relevant to the resolution of the instant motion and we will decline the invitation to stay consideration of this motion.

judgment as a matter of law." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A disputed issue is only "genuine" if there is a sufficient evidentiary basis upon which a reasonable factfinder could find for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" only if it could affect the outcome of the suit under the governing law. Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)). The Court is not tasked with resolving disputed issues of fact, but only with determining whether there exist any factual issues that must be tried. Anderson, 477 U.S. at 247-49.

In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Macfarlan, 675 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). Where there exist factual issues that cannot be resolved without a credibility determination, the court must credit the non-moving party's evidence over that presented by the moving party. Liberty Lobby, 477 U.S. at 255. However, if there is no factual issue presented, and if only one reasonable conclusion could arise from the record with respect to the potential outcome under the governing law, the court must award summary judgment in favor of the moving party. Id. at 250.

The court must review the entire record, but in doing so must take care to "disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150-51 (2000). The task for the court is to examine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52. In considering this evidence, we note that "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment." Paladino v. Newsome, 885 F.3d 203, 209 n. 34 (3d Cir. 2018) (quoting Lupyan v. Corinthian Colleges, Inc., 761 F.3d 314, 320 (3d Cir. 2014)). This principle of the rules governing summary judgment holds true "even where . . . the information is self-serving." Id. (citing Lupyan, 761 F.3d at 321 n.2).

## IV. DISCUSSION

### A. Choice of Law Considerations

Initially, the defendant brings to our attention a potential conflict of laws issue, as the alleged assault occurred in Massachusetts and Shohola does business in Pennsylvania. Under Pennsylvania's choice-of-law rules, a court must initially determine whether there is an actual conflict between the competing States' laws. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 231 (3d Cir. 2007). To make this

determination, the court must analyze the substance of the potentially applicable laws to identify "whether these states would actually treat this issue any differently." Id. at 230. If the application of the competing laws would not lead to different outcomes, no conflict exists, and the court need only apply the forum State's law. Id.; see also High v. Balun, 943 F.2d 323 (3d Cir. 1991) ("Where the application of either state's law would yield the same result, no conflict exists to be resolved"). Both Pennsylvania and Massachusetts have adopted the Restatement (Second) of Torts.[3] Thus, it appears that no meaningful conflict exists, as the application of either Pennsylvania or Massachusetts law would not lead to a materially different outcome, and Pennsylvania law will therefore govern the instant action.

Accordingly, we will rely upon Pennsylvania law in addressing the four claims advanced by R.D. against Shohola. As we have noted, the plaintiff has asserted four claims against Shohola. First, R.D. claims that Shohola is liable to him in negligence for the injuries he sustained during the sexual assault, due to a breach of Shohola's duty to protect and supervise the then-minor plaintiff on the

---

[3] The Restatement (Second) of Torts is applicable to the instant action, as the plaintiff is alleging negligence claims and intentional tort claims. See Brown v. Knight, 285 N.E.2d 790 (Mass. 1972) and T.A. v. Allen, 669 A.2d 360 (Pa. Super. Ct. 1995) (both holding that a person who takes custody of a minor child can be liable in negligence for a breach of a duty to protect the minor). Additionally, Count IV of the second amended complaint is brought pursuant to 23 Pa.C.S. § 6311.

Cape Cod Trip. It is further alleged that Shohola negligently hired, supervised, and retained its employees because the camp should have known that N.S., as well as the camp's supervising counselors, presented a danger to the plaintiff. R.D. also asserts that Shohola is liable for the battery allegedly committed by N.S. Finally, R.D. brings a claim of negligence *per se* based on Shohola's failure to report the alleged abuse pursuant to the CPS Act. We will address each of the plaintiff's claims in turn.

**B.** **The Plaintiff's Direct Negligence Claim against Shohola Survives Summary Judgment.**

At the outset, R.D. asserts that Shohola was negligent because the camp breached its duty to protect and supervise him on the Cape Cod trip, which led to him being sexually assaulted by another camper. He claims that Shohola had a duty to ensure that the campers were safe and secure and to supervise the minor campers on the trip, and that Shohola breached this duty by failing to provide adequate supervision, including the two-two-one camper to counselor ratio as promised. (Doc. 27, ¶ 14(a)-(l)). Shohola contends that it did not breach a duty to R.D. because the camp did not know that N.S. posed a danger to other campers, and thus it cannot be liable for R.D.'s injuries.

In order to state a cause of action for negligence in Pennsylvania, a plaintiff must show four elements: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused

the injury in question; and (4) the plaintiff incurred actual loss or damages." Pyeritz v. Commonwealth, 32 A.3d 687, 692 (Pa. 2011). Whether a defendant owes a duty to the plaintiff is a question of law. See Restatement (Second) of Torts 328(B) (1965). Here, Shohola argues that it did not have a duty to protect R.D. because the camp did not know of the dangerous propensities of N.S. (Doc 202-1, at 11). Thus, the lynchpin of Shohola's argument regarding this direct negligence claim is its contention that it must have subjective knowledge of N.S.'s dangerous propensities at the time of this incident in 2007 in order to be liable on this claim.

Shohola relies on Evanko v. Management & Training Corp., 546 F.Supp.2d 188 (M.D. Pa. 2008), aff'd 378 F. App'x 142 (3d Cir. 2010), for the proposition that in order for the camp to be held liable, it must have had some prior notice that N.S. was a danger to other campers. In Evanko, the defendant was a corporation that operated a residential training facility where it boarded its students. Id. at 189. Three of its students left the premises without permission and went to the mall, where they ultimately assaulted the plaintiff in order to take his money, leaving him with a broken jaw. Id. at 190. The Third Circuit held that the defendant was not liable in negligence for the plaintiff's injuries because the defendant was not aware of the students' propensities for violent behavior, as is required to find a duty under Section 319 of the Restatement. Id. at 193.

Shohola also relies on <u>Simonetti v. School District of Philadelphia</u>, 454 A.2d 1038 (Pa. Super. Ct. 1982) and <u>Bottorf v. Waltz</u>, 369 A.2d 332 (Pa. Super. Ct. 1976) to support its assertion that prior subjective awareness of a specific danger is an element of a direct negligence claim in this particular factual setting. In <u>Simonetti</u>, the court held that a school teacher was not liable for injuries a student sustained when another student threw a pencil at his eye. <u>Simonetti</u>, 454 A.2d at 1040. In <u>Bottorf</u>, the court found that a school teacher was not negligent when a student spilled hot wax and injured another student. <u>Bottorf</u>, 369 A.2d at 335. In both cases, the Pennsylvania Superior Court reasoned that a teacher's momentary absence from the classroom could not be negligent, and that while teachers are expected to supervise their students, they could not be expected to monitor every student's movement at all times. <u>See</u> <u>Simonetti</u>, 454 A.2d at 1040-41; <u>Bottorf</u>, 369 A.2d at 334-35.

In our view, the defendant's reliance on these cases to defeat a direct negligence claim against Shohola is misplaced since these decisions are readily distinguishable. In <u>Evanko</u>, the defendant had no relationship with the plaintiff who was injured, and therefore did not have a duty to protect him. In the instant case, the relationship between Shohola and R.D. was at least that of *in loco parentis*, (Doc. 204-1, at 3), which as discussed in more detail below, imposed a duty on Shohola to affirmatively protect R.D. Moreover, in contrast to <u>Simonetti</u>

and <u>Bottorf,</u> the lack of supervision alleged in this case is more than a momentary absence. Quite the contrary, R.D. alleges that there was almost no supervision at all while the boys were in their tents overnight. Therefore, the cases relied upon by the defendant are factually distinguishable from the instant case, and as such they do not aptly represent general negligence standard that is applicable to this case.

Ordinarily, there is no duty to affirmatively act to prevent harm to others. <u>See</u> Restatement (Second) of Torts § 315. However, one has a duty to protect others when "a special relation exists between the actor and the other which gives the other a right to protection." § 315(b). Section 314A of the Restatement lists four special relations that give rise to a duty to protect another, one of which is particularly relevant to the instant case: "one who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other." Restatement (Second) of Torts § 314A(4). As one court has aptly noted, a plaintiff who is in a special relationship under Section 314A is "typically in some respect particularly vulnerable and dependent on the defendant, who, correspondingly, holds considerable power over the plaintiff's welfare." <u>Bjerke v. Johnson</u>, 727 N.W.2d 183, 189 (Minn. Ct. App. 2007) (quoting W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 56, at 374 (5th ed. 1984)).

In addition to the Restatement approach, Pennsylvania courts weigh five factors in determining whether to impose a duty on a defendant: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty on the actor; and (5) the overall public interest in the proposed solution." Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2002). With respect to the foreseeability factor, the United States Court of Appeals for the Third Circuit has held:

> The type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event. See, e.g., Moran v. Valley Forge Drive-In Theater, Inc., 431 Pa. 432, 246 A.2d 875, 878 (1968) (upholding verdict for plaintiff who lost hearing when firecrackers exploded in restroom of defendant's movie theater). Instead, in the context of duty, "[t]he concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." Suchomajcz v. Hummel Chem. Co., 524 F.2d 19, 28 n. 8 (3d Cir. 1975) (citing Harper & James, The Law of Torts § 18.2, at 1026, § 20.5, at 1147–49 (1956)); see Griggs, 981 F.2d at 1435 (" 'The risk reasonably to be perceived defines the duty to be obeyed[.]' ") (quoting Dahlstrom, 84 A.2d at 290–91). Only when even the general likelihood of some broadly definable class of events, of which the particular event that caused the plaintiff's injury is a subclass, is unforeseeable can a court hold as a matter of law that the defendant did not have a duty to the plaintiff to guard against that broad general class of risks within which the particular harm the plaintiff suffered befell. Alumni Ass'n v. Sullivan, 369 Pa. Super. 596, 535 A.2d 1095, 1098 (1987) (citing Migyanko v. Thistlethwaite, 275 Pa. Super. 500, 419 A.2d 12, 14 (1980) and Palsgraf v. Long Island R.R., 248 N.Y. 339, 162 N.E. 99, 100 (1928)), aff'd, 524 Pa. 356, 572 A.2d 1209 (Pa.1990).

Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1369 (3d Cir. 1993).

Furthermore, the Third Circuit has held in the context of a direct negligence claim brought against a recreational camp that a camp owes the highest degree of care to its campers. Burwell v. Crist, 373 F.2d 78 (3d Cir. 1967). In Burwell, an eleven-year-old girl was fatally injured when a horse kicked her in the head while she was at camp. Id. at 80. The girl's parents had paid for her to attend the camp, and had relied on the brochure's assurances of the camp's qualifications and care of children. Id. The Court held that the girl was entitled to the highest degree of care, not only with respect to the horses that the camp selected for riding, but "for her protection in every phase of her activities in connection therewith." Id. at 81.This longstanding Third Circuit holding, in turn, is consistent with the rising tide of case law in many state courts which have held camps to a similar high standard of care.[4]

---

[4] See, e.g., Johnson v. Outback Lodge & Equestrian Center, LLC, 2016 WL 930738, at *5 (Mich. Ct. App. 2016) (finding a camp had a duty of care to a child whose parent registered her for the camp and agreed to place her under the control of the camp, and holding that the questions of whether the defendant breached the duty of care should be left to a jury); Santa v. Williams, 2013 WL 3148711 (Ill. App. Ct. 2013) (finding that sexual contact between teenage campers was reasonably foreseeable and the camp supervisor had a duty of care to protect the campers); Phelps v. Boy Scouts of America, 305 A.D.2d 335, 335-36 (1st Dep't N.Y. 2003) (finding that, "where . . . very young campers were placed in bunks with much older campers, in apparent violation of camp policy, the need for particular vigilance to assure the safety and welfare of the younger campers should have been evident"); Brown v. Knight, 285 N.E.2d 790 (Mass. 1972) (holding that a camp had an onerous duty to protect the minor plaintiff from serious harm,

In the instant case, the societal factors identified by the Pennsylvania Supreme Court in <u>Althaus</u> weigh in favor of imposing a duty on the defendant. Shohola had a relationship with R.D. because it took custody of R.D. when his parents paid for him to attend the camp, and when it assured his parents that he would be supervised on the trip. The nature of this relationship was at least that of a parent-child relationship, as the defendant even concedes. (Doc. 204-1, at 3). The consequence of imposing a duty on a summer camp to supervise its campers is minimal, as Pennsylvania law already imposes a duty to protect upon a person or organization that takes custody of another and deprives him of his normal sources of protection—*i.e.*, his parents. <u>See</u> Restatement (Second) of Torts § 314A(4). Moreover, while there is some social utility to running a summer camp for children, the public interest would not be advanced by exempting the camp from a general duty of care for the children entrusted to it. Rather, the public interest is best served by imposing a duty upon such a camp to adequately supervise the children it takes into its custody.

Additionally, and perhaps most importantly, the risk of some injury was foreseeable to the camp, at least in the general sense described by the court in <u>Kleinknecht v. Gettysburg College</u>, 989 F.2d 1360, 1369 (3d Cir. 1993); that is,

---

including an affirmative duty to take protective acts); <u>Wallace v. Der-Ohanian</u>, 199 Cal.App.2d 141 (Cal. App. 1962) (finding a camp operator negligent for failing to supervise an eleven-year-old girl when she was sexually assaulted by an unknown man).

"the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." Id. [5] A counselor who was on the Cape Cod trip, Robert Paderofsky, testified that he understood young boys are sexually curious. (Doc. 214, Ex. D., at 174). Duncan Barger, the camp's co-director, testified that there was a verbal policy communicated to counselors regarding the topic of sexual abuse at Camp Shohola and that it would not be tolerated. (Doc. 214, Ex. E, at 151). Holly Barger testified that there was a policy that was disseminated to the counselors about sexual abuse, and that her husband, Duncan, conducted an "appropriate behaviors" meeting with every camp staff. (Doc 214, Ex. F, at 81-82). Additionally, the Camp Shohola Operating Procedures Manual specifically lists sexual abuse as an "unacceptable behavior," along with bullying and intimidation. (Doc. 214, Ex. K, at 32). Since Shohola appears to have actually foreseen the possibility of sexual abuse by campers,  we find that it was reasonably foreseeable that there could be a risk of sexual misconduct at the camp, given the practices and procedures that the camp states that it had to guard against such abuse.

---

[5] The defendant contends in its statement of facts that N.S.'s assault was unforeseeable. (Doc. 202-4, ¶ 14). In its reply brief on the instant motion, the defendant argues that the plaintiff has not contested, and therefore has admitted this statement. (Doc. 221, at 18). However, paragraph 14 states a legal conclusion, not a material fact, regarding foreseeability, which is a central issue in the plaintiff's negligence claim. Furthermore, the entire history of this litigation reveals that this factual issue is hotly contested by the parties. Thus, we will not deem paragraph 14 admitted as the defendant requests.

Furthermore, Shohola's own supervisory procedures indicate that Shohola was aware of the need for supervision of its campers. In the Operating Procedures Manual, one of the "Shohola-isms" listed is "row duty," which is defined as: "[c]ounselors assigned to patrol the cabins after lights out until midnight. They are responsible for the health, safety and general welfare of the campers, as well as maintaining quiet." (Doc. 214, Ex. K, at 11). Duncan Barger testified that the camp tries to meet or exceed the American Camp Association ("ACA") Guidelines for camper-to-counselor ratios "to safely supervise [the campers]." (Doc. 214, Ex. E, at 127). In fact, Shohola marketed its camp as providing excellent supervision, as R.D.'s father testified that he spoke with Duncan Barger and was assured that his son would be supervised at camp at all times. (Doc. 214, Ex. G, at 121). Thus, for purposes of determining whether some legal duty of care existed we conclude that Shohola was aware of the foreseeability of the occurrence of a general type of risk regarding sexual abuse, as it had procedures in place to deal with such issues and made sure its staff knew how to respond and react if such behavior occurred.

Because we find that Shohola had taken custody of R.D., which created a special relationship within the meaning of Section 314A, and that the harm R.D. suffered was reasonably foreseeable, we find that Shohola had a duty, at the very least, to adequately oversee its campers. Accordingly, the question of whether Shohola breached that duty, and whether any breach was the proximate cause of

R.D.'s injuries, is a question for a jury. See Kleinknecht, 989 F.2d at 1373; see also Spraggins v. Shields, 456 A.2d 1000, 1001 (Pa. Super. Ct. 1983) (holding that a court should not remove the question of negligence from the jury "unless the facts leave no room for doubt"). Here, there are genuine issues of material fact from which a jury could determine that Shohola breached its duty to R.D. by failing to adequately oversee the campers, and that any breach of duty proximately caused R.D's injuries. Thus, we will deny Shohola's motion for summary judgment with respect to the direct negligence claim.

**C.** **Shohola is Entitled to Summary Judgment on R.D.'s Claims of Negligent Supervision, Battery, and Negligence Per Se.**

    **1.** **R.D.'s Claims of Negligent Supervision and Battery Fail as a Matter of Law.**

R.D. next asserts a claim for negligent supervision, hiring, and retention pursuant to Restatement (Second) of Torts § 317. He alleges that Shohola failed to supervise its agents, servants or employees, and that the camp knew or should have known that N.S., as well as the counselors on the trip, were dangerous, careless, or incompetent, which led to R.D.'s injuries. (Doc. 27, ¶ 25). He further asserts a state law battery claim, alleging that Shohola is both primarily and vicariously liable for the harm R.D. suffered. (Doc. 27, ¶ 21). As we discuss below, negligent supervision claims, like those alleged here, are a specific species of tort liability which typically holds a principal liable in certain circumstances for the tortious

acts of its agents. As such, the claims entail elements of pleading and proof which differ from those applicable to a general, direct negligence claim.

### (a)  Negligent Supervision Claim

Because this tort liability often turns on the principal-agent relationship, Pennsylvania courts analyze negligent supervision claims under both Section 317 of the Restatement (Second) of Torts, and Section 213 of the Restatement (Second) of Agency. See Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 488 n. 23 (3d Cir. 2013). An employer may be held liable for harm to a third party "if he is negligent or reckless in the employment of improper persons . . .; in the supervision of the activity; or in permitting, or failing to prevent, negligent or other tortious conduct by persons . . . upon premises or instrumentalities under his control." R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 697 (Pa. Super. Ct. 2000) (quoting Restatement (Second) of Agency § 213)). Additionally, when an employee acts outside of the scope of his employment, "it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee." Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 422 (Pa. 1968) (discussing employer liability under Restatement (Second) of Torts § 317). The harm caused by the improperly supervised employee must have been reasonably foreseeable by the employer. Belmont, 708 F.3d at 491. Simply put, "an employer owes a duty to exercise reasonable care in selecting,

supervising, and controlling its employees." <u>Doe v. Liberatore</u>, 478 F.Supp.2d 742, 760 (M.D. Pa. 2007) (internal quotations omitted).

At the outset, we note that the plaintiff has not come forward with evidence to show the existence of an employer-employee relationship between N.S. and Shohola that is required to hold Shohola vicariously liable for N.S.'s actions. Shohola denies that N.S. was its employee or agent at the time of these events and there is no evidence that establishes a principal-agent relationship between Shohola and N.S., beyond the speculative testimony of the plaintiff and E.J. that N.S. might have been a counselor-in-training or a "senior camper." In contrast, to the rather speculative assertion, the allegations in the second amended complaint directly aver that R.D. was sexually assaulted by a fellow camper, not by an employee of the camp. (Doc. 27, ¶ 13). The boys' speculative testimony, without more,[6] is

_____

[6] R.D. suggests that he possesses something more than this speculative testimony in that he alleges that Shohola did not produce any pertinent records relating to N.S. for 2007, the year when the assault allegedly occurred. R.D. then invites us to find that the absence of these records establishes spoliation of records, and permits a spoliation inference which, in turn, would defeat this motion for summary judgment. However, beyond noting the absence of these records, R.D. provides us with no basis for finding that relevant evidence has been intentionally withheld or destroyed by Shohola. The absence of any such proof undermines R.D.'s efforts to use the spoliation inference to defeat a summary judgment claim. As one court aptly noted in rebuffing a similar argument:

Last, Plaintiff attempts to overcome Defendants' summary judgment motions by arguing for a spoliation inference. . . . .. A party may be entitled to a sanction if its adversary destroys or withholds evidence. <u>See Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 78 (3d

insufficient to subject Shohola to liability based on a vicarious liability negligent supervision claim. Thus, R.D.'s negligent supervision claim with respect to the supervision of N.S. fails as a matter of law.

As to the allegations that Shohola negligently hired, supervised, and retained its camp counselors, while we have already found that harm to R.D. was foreseeable in a general sense, there is no evidence that Shohola was more specifically negligent in hiring the counselors that attended the Cape Cod trip. On this score, R.D. does not allege that there was certain conduct or incidents in the

---

Cir.1994). The Third Circuit in <u>Schmid</u>, . . . provided the following three factors for courts to consider when determining what sanction is appropriate: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." <u>Id</u>. at 79. In this case, Plaintiff's argument fails to get off the starting line. For the Court to even entertain sanctions or some adverse inference due to spoliation there must be evidence that Defendant . . . actually destroyed, suppressed, or withheld evidence from Plaintiff. <u>See Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 334 (3d Cir.1995) ("[I]t must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."). Plaintiff has not put forth evidence that Defendant destroyed, altered, or otherwise withheld surveillance evidence of the incident.

<u>Felix v. GMS, Zallie Holdings, Inc.</u>, 827 F. Supp. 2d 430, 441–42 (E.D. Pa. 2011), <u>aff'd</u>, 501 F. App'x 131 (3d Cir. 2012)

counselors' pasts that made it negligent for Shohola to hire them. See Heller v. Patwil Homes, Inc., 713 A.2d 105, 108-09 (Pa. Super. Ct. 1998) (the defendant was not negligent in hiring an employee when there was no history of conduct that would have disclosed the employee's involvement in illegal activity). Further, R.D. has not shown that Shohola knew or should have known of the necessity for exercising a greater measure of control over these counselors. There is no allegation, and no evidence in the record, that shows that the counselors were known to ignore their responsibilities and fail to supervise the campers. Moreover, there is no allegation that prior instances of sexual abuse, like the incident alleged in this case, ever took place at Shohola under the supervision of these counselors. Thus, it cannot be said that Shohola should have known of the necessity of exercising greater control over the counselors on the Cape Cod Trip. See Doe v. Liberatore, 478 F.Supp.2d at 761 (holding that a jury could find that a church negligently retained and supervised a priest where there was evidence that the priest was "grooming" the minor plaintiff for a sexual relationship); see also Hutchinson ex rel. Hutchinson v. Luddy, 742 A.2d 1052, 1059 (Pa. 1999) (finding negligent supervision where an employer knew of the defendant's propensity for pedophilic behavior and of several specific instances of such conduct"). Accordingly, we will grant the defendant's motion for summary judgment with respect to the negligent supervision claim.

### (b)     Battery Claim

To state a claim for battery under Pennsylvania law, a plaintiff must show that the defendant acted with the intent to cause a harmful or offensive contact with the plaintiff's person, or an imminent apprehension of such contact, and an offensive contact directly or indirectly resulted. See Restatement (Second) of Torts § 18; see also Montgomery v. Bazaz-Sehgal, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999). As an initial matter, we note that R.D. alleges that Shohola is both primarily and vicariously liable for the battery claim. (Doc. 27, ¶ 21). However, there are no allegations in the second amended complaint, and no evidence in the record, showing that Shohola had any intent to cause harmful contact, or the apprehension of harmful contact, to R.D.'s person. Thus, the battery claim asserted against Shohola is essentially one of vicarious liability.

Ordinarily, an employer can be held vicariously liable for intentional torts committed by its employees while acting within the scope of their employment. See Valles v. Albert Einstein Med. Center, 805 A.2d 1232, 1237 (Pa. 2002). However, as we have already discussed with respect to the negligent supervision claim, R.D. has not shown the existence of an employer-employee or other agency relationship between N.S. and Shohola, and therefore cannot assert a vicarious liability claim against Shohola based on the alleged battery committed by N.S.

Thus, we find that R.D.'s battery claim fails as a matter of law, and we will grant the defendant's motion for summary judgment with respect to this claim.

**2. R.D.'s Negligence Per Se Claim Fails because Shohola Did Not Have a Duty to Report under the CPS Act at the Time of the Events Alleged in the Complaint.**

Finally, R.D. claims that Shohola was negligent *per se* because the camp failed to report the abuse that he suffered on the Cape Cod trip, which the camp had a duty to report pursuant to the Child Protective Services Act ("CPS Act"), 23 Pa.C.S. § 6311. Shohola argues that it did not have a duty to report the abuse because it did not know that the alleged abuse had occurred until R.D. filed the instant lawsuit in 2016. We agree with the defendant and will grant the motion for summary judgment with respect to the negligence *per se* claim.

Pennsylvania law recognizes that the violation of a statute may serve as the basis for a negligence *per se* claim. Cecile Industries, Inc. v. United States, 793 F.2d 97, 100 (3d Cir. 1986). In order to prove a claim based on negligence *per se*, the following four elements must be satisfied:

> (1) the purpose of the statute must be, at least in part, to protect the interest of the plaintiff individually, as opposed to the public; (2) the statute or regulation must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute or regulation; and (4) the violation of the statute or regulation must proximately cause the plaintiff's injuries.

Jordan v. City of Philadelphia, 66 F.Supp.2d 638, 644 (E.D. Pa. 1999) (citing Cecile, 793 F.2d at 100). R.D. brings his negligence per se claim pursuant to the

CPS Act, 23 Pa.C.S. § 6311. He alleges that Shohola was a mandated reporter under the Act. He further alleges that, as a mandated reporter, the camp violated the statute when it did not report the abuse he suffered.

At the outset, we note that elements one and two of R.D.'s negligence *per se* claim are met in this case. R.D.'s interest is within the class of interests intended to be protected by the statute. The intent of the CPS Act is to protect abused children from further abuse by creating a more complete reporting system, and to establish protective services for the purpose of swift and competent investigations of child abuse. 23 Pa.C.S. §6302(b). R.D. was allegedly a victim of child abuse, and thus falls within the Act's intended protections.

As to the second element, the CPS Act applies to Shohola's conduct. Section 6311(a) provides a list of sixteen adults that are deemed "mandated reporters" under the act. Of particular relevance to the instant action are subsections (a)(5) and (a)(7). Subsection (5) states that "an employee of a child-care service who has direct contact with children in the course of employment" is a mandated reporter. § 6311(a)(5). Similarly, subsection (7) states that an individual who is a person responsible for the child's welfare or has direct contact with children by way of his or her role as an "integral part of a regularly scheduled program, activity, or service," is a mandated reporter. § 6311(a)(7). A person who qualifies as a mandated reporter under the Act is required to make a report of suspected child

abuse if he or she "has reasonable cause to suspect that a child is a victim of child abuse" when the reporter "comes into contact with the child in the course of employment, occupation and practice of a profession or through a regularly scheduled program, activity or service." § 6311(b)(1)(i). Shohola would qualify as a mandated reporter under either subsection (a)(5) or (a)(7), as the camp has direct contact with children in the course of its employment, and the camp is responsible for the welfare of children it comes into contact with by way of providing its services as a summer camp.

While R.D. has met the first two elements of his negligence *per se* claim, we find that his claim fails on the third and fourth elements. It is true that Shohola would be a mandated reporter under the Act. As a mandated reporter, Shohola would be required to report any incident of child abuse that it had reasonable cause to suspect had occurred. However, in the instant case, there is no evidence at all that would suggest that Shohola had reason to suspect that R.D. was abused on the Cape Cod trip until 2016, when R.D. filed this lawsuit. Shohola could not have reported abuse of which it was not aware. Moreover, although a determination of proximate cause is ordinarily an evidentiary question for a jury, because we have found that there was no violation of the CPS Act, it follows that there could be no finding that a violation was the proximate cause of R.D.'s injuries. See Jordan v. City of Philadelphia, 66 F.Supp.2d at 644 (the evidentiary question of whether a

party's conduct was the proximate cause of the alleged injury "should be removed from the jury's consideration only where it is evident that reasonable minds cannot differ on the issue"). Thus, because there was no violation of the CPS Act, R.D.'s negligence per se claim fails as a matter of law. In any event, since it appears that Shohola's first notice of this alleged abuse occurred in 2016 when this lawsuit was filed, establishing that the violation of the statute or regulation proximately caused the plaintiff's injuries is not possible, since this notice which was received in 2016 cannot be seen as the cause of an injury which took place nine years earlier, in 2007. Accordingly, we will grant the defendant's motion for summary judgment with respect to this claim.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, we conclude that the defendant is entitled to summary judgment on the plaintiff's negligent supervision, battery, and negligence per se claims. However, there are genuine issues of material fact regarding the plaintiff's direct negligence claim, which preclude the entry of summary judgment on those claims. Therefore, we will grant the motion for summary judgment as to the negligent supervision, battery, and negligence per se claims, but deny the motion as to the direct negligence claim.

An appropriate order follows.