# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **R.D.,** | : | Civil No. 3:16-CV-01056 |
| **Plaintiff,** | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| **SHOHOLA, INC.,** | : | |
| **Defendant.** | : | |

## MEMORANDUM ORDER

### I.  Factual Background

This matter comes before us on a motion to reconsider our ruling on the defendant's summary judgment motion, which granted summary judgment on all but one of the plaintiff's claims—a direct negligence claim. (Doc. 230). This lawsuit was initiated on June 3, 2016 and arose out of an alleged sexual assault that occurred on an overnight camping trip hosted by the defendant, Shohola, Inc., in 2007. The plaintiff, who was a minor at the time of the alleged assault, brought four claims against Shohola—negligence, negligent supervision, negligence *per se*, and a state law battery claim. (Doc. 27). After the parties engaged in discovery, Shohola filed a motion for summary judgment, arguing that it had no duty to protect the plaintiff

from any alleged sexual assault that occurred on the camping trip, and thus was not liable to him in negligence. (Doc. 202).

On November 13, 2018, we granted the defendant's summary judgment motion with respect to the negligent supervision, negligence *per se*, and battery claims, but denied the motion with respect to the direct negligence claim. (Doc. 230). In doing so, we applied Pennsylvania law and relied on the Restatement (Second) of Torts, which imposes a duty upon a person or organization to affirmatively protect one who is in its care and custody by way of a special relationship. See Restatement (Second) of Torts §§ 314A(4), 315(b). We found that a special relationship existed between the camp and the plaintiff, a minor camper in its custody, and thus the camp had a duty to act affirmatively to protect the plaintiff.

Additionally, we were guided by the Pennsylvania Supreme Court's decision in Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2002), in which the court set forth five factors to be considered in determining whether to impose a duty on a defendant. In our discussion of these factors, we noted that the foreseeability of the harm incurred was the most significant factor, and we found that the harm incurred in this case—inappropriate behavior between campers due to a lack of supervision—was foreseeable to the camp, and thus the camp had a duty to protect its campers from that harm. In so finding, noted that the harm which allegedly occurred here—sexual contact between campers—was not only generally

2

foreseeable, it was actually foreseen by the defendant's employees according to their testimony.

However, our decision on this aspect of the plaintiff's case was not only guided by Pennsylvania Supreme Court precedent, the legal authority we are bound to follow when exercising our diversity jurisdiction. We also relied on the binding authority of the United States Court of Appeals for the Third Circuit, which held that foreseeability in this context means "the likelihood of the occurrence of a general type of risk," rather than the likelihood of the occurrence of a specific event. See Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1369 (3d Cir. 1993). We noted that deposition testimony and the camp's own manual and procedures revealed that the camp was aware that inappropriate behavior, including sexual assault, could occur if supervision of the campers was lacking. Thus, we ultimately found that Shohola had a duty, at the very least, to provide adequate supervision to its campers, and that the question of whether it breached that duty was a question for a jury.

Shohola now invites us to reconsider our ruling on its summary judgment motion, arguing that this Court committed a clear error of law in finding that the camp owed a duty to protect and supervise the plaintiff. Shohola contends that, to be held liable in negligence, the camp must have had notice of the dangerous propensities of the plaintiff's alleged attacker, N.S., and that the lack of such notice entitles the camp to summary judgment on the plaintiff's direct negligence claim.

3

Shohola also asserts that our ruling erroneously holds the camp to a higher standard of care than the law requires. Finally, Shohola argues that our holding will set a dangerous precedent that would expand tort liability beyond what state law intends.

After careful consideration, we disagree, and for the reasons set forth below, we will deny the defendant's motion for reconsideration.

## II. Discussion

The legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically, such a motion should only be granted in three, narrowly defined circumstances, where there is either: "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice." Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [previously ruled]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

Judged by these legal guideposts, we will deny the defendant's motion for reconsideration. While the defendant contends that we have committed a clear error of law by imposing a duty upon the camp to protect and supervise its campers, Shohola ignores the controlling Pennsylvania and Third Circuit caselaw and the relevant Restatement sections upon which we relied to impose a duty in this case. Instead, Shohola points us to other inapplicable sections of the Restatement, as well

5

as non-binding, out-of-state caselaw, to argue that it did not have notice of N.S.'s dangerous propensities, and thus cannot be liable in negligence.

In our view, the defendant's argument conflates and confuses the elements of negligent entrustment claims and general negligence claims. Those provisions of the Restatement which deal with negligent entrustment claims require some specific notice of the danger a third party presents to others. For example, Section 316 of the Restatement imposes a duty upon a parent to control the actions of his or her child and prevent the child from harming others when that parent knows such control over the child is necessary. See Restatement (Second) of Torts § 316. Section 319, in turn, imposes a duty to control the actions of a third person upon one who is in charge of a person that is known to have dangerous propensities. § 319.

While these sections require that a person have notice of the need for exercising control of a third party, they are not applicable to the instant negligence claim. The plaintiff's negligence claim is premised on the notion that Shohola had a duty to protect R.D., not to control the actions of N.S. specifically. Accordingly, as we discussed in our memorandum denying the defendant's motion, the applicable sections of the Restatement are sections 314A and 315, which deal with an organization's duty to act affirmatively to protect a person in its custody and care, rather than a duty to prevent a third party's actions. Our decision does not impose a duty upon the camp to control the actions of N.S. Rather, Shohola had a duty to

affirmatively protect R.D. from foreseeable third party harms because of the special relationship between the camp and its campers. See § 314A.[1]

Pennsylvania case law has long expressly recognized the application of Section 314A to establish tort liability in cases involving generally foreseeable harms caused by the actions of third parties. For example, in Rabutino v. Freedom State Realty Co., 2002 PA Super 318, ¶ 9, 809 A.2d 933, 938 (2002), the Pennsylvania Superior Court relied upon Section 314A to find that an innkeeper had a special relationship with a hotel guest and therefore had a legal duty to protect the guest from harmful third party conduct that might be reasonably anticipated. In reaching this result, the Superior Court noted that the guest was a business invitee, and as a business invitee was entitled to this measure of legal protection by the defendant against foreseeable third party harms. It is also clear under Pennsylvania law that campers at a commercial recreational camp are considered business invitees who are entitled under Section 314A to the same degree of protection from harmful

---

[1] The defendant argues that the decision in Evanko v. Management & Training Corp., 546 F.Supp.2d 188 (M.D. Pa. 2008), aff'd 378 F. App'x 142 (3d Cir. 2010), is instructive and supports its position because the court did not rely on the lack of a relationship between the plaintiff and the corporation, but instead relied on the "notice of a dangerous propensity" standard to find that there was no liability. (Doc. 238, at 10). However, the Evanko case involved § 316 of the Restatement, as both parties "agree[d] that duty in this case is based on the duty to control the acts of a third person." Id. at 192. The present case, in contrast, is not based on the duty to control the acts of a third person, but to control the camp's own acts and the acts of its agents based on the relationship between the camp and its campers. Thus, this argument is unavailing.

third party conduct that might be reasonably anticipated. See generally M.S. ex rel. Michelle M.S. v. Cedar Bridge Military Acad., 904 F. Supp. 2d 399, 409 (M.D. Pa. 2012).

Notwithstanding this longstanding state and federal case law sustaining the theory of liability advanced by R.D., Shohola argues that the factors set forth in Althaus only apply when the court is contemplating the creation of a new duty, and thus, creating such a duty in this case would be an overreach of this court's authority. While the defendant is correct that the Althaus factors are "more relevant to the creation of new duties than to the vindication of existing ones," Alderwoods Inc., v. Duquesne Light Co., 106 A.3d 27, 40 (Pa. 2014), Shohola overlooks the fact that this court already found an existing duty to protect under Restatement §§ 314A(4) and 315. We found this duty following what we understand to be the dictates of both state law, and the guidance of the United States Court of Appeals for the Third Circuit. Thus, while our analysis of the Althaus factors supports a finding that Shohola had a duty to protect R.D. from foreseeable third party harms, it was not dispositive to the finding that Shohola had a duty to protect R.D. See Scampone v. Grane Healthcare Co., 169 A.3d 600, 617 (Pa. Super. Ct. 2017) (finding that a duty existed under the Restatement, and thus an analysis of the Althaus factors would be "superfluous" and "not necessary"). Accordingly, this court did not create a new

legal duty; the Restatement, which Pennsylvania has adopted, imposes a duty to protect on Shohola due to the special relationship between the camp and its campers.

Additionally, Shohola directs us to a wide variety of out-of-state caselaw and contends that these cases support its position that specific notice was required for it to be held liable in negligence. Initially, we note that, while we cited to some of the same cases in our memorandum, (Doc. 230, at 13, n. 4), we did so only to provide examples of the trend in other jurisdictions of holding summer camps to a high standard of care, as Pennsylvania does. Our decision to impose a duty on Shohola was based solely on Pennsylvania law, as Pennsylvania law is controlling in this case. These out-of-state holdings, therefore, do not compel us as a federal court exercising diversity jurisdiction to discount the existing law in Pennsylvania. Indeed, it would be a derogation of our duty to faithfully apply state law in this diversity lawsuit if we discounted applicable Pennsylvania law in favor of the law of a foreign jurisdiction.

Shohola also asserts that this Court, in imposing a duty upon it to protect its campers, held the defendant to a higher standard of care than the law requires. Shohola relies on Restatement (Second) of Torts § 316 and argues that it cannot be held to a standard beyond that of a reasonable parent who knew of his or her child's dangerous propensities. As we have already explained, § 316 is not applicable in this case. Additionally, our ruling on the summary judgment motion does not hold the

9

camp to a higher standard of care than is legally required. Sections 314A and 315 of the Restatement imposes a duty upon the camp to protect those with whom it has a special relationship. Our decision denying summary judgment on the plaintiff's negligence claim imposes that duty, and nothing more.

Finally, the defendant asserts that our holding that the inappropriate conduct in this case was foreseeable sets a dangerous precedent that will essentially open Pandora's box in the realm of tort liability. Shohola argues that, under our holding, any person who is supervising a child in any type of situation will be liable if a sexual assault occurs. (Doc. 238, at 18). However, our holding is not so broad. Contrary to the defendant's contention, we did not hold that "it is reasonably foreseeable that children without a known propensity will rape each other." (Id.) Rather, we held that, in this case, it was foreseeable to the camp that inappropriate conduct could occur between campers absent appropriate supervision. (Doc. 230, at 14-16). In so holding, we relied on binding precedent from the United States Court of Appeals for the Third Circuit in Kleinknecht, 989 F.2d 1360 (3d Cir. 1993), which held that foreseeability in the context of duty refers to a general type of risk, not a specific chain of events. Id. at 1369. We cannot simply abandon this binding precedent in favor of the defendant's specific propensity approach, which we have explained is inapplicable in this case.

Furthermore, in addition to relying on Third Circuit precedent, we also relied on the fact that the camp's own supervisors were subjectively aware of the general risk of inappropriate behavior occurring between campers. The deposition testimony of the camp's directors, the camp's manuals for its staff, and the camp's supervisory procedures all indicate that the camp was aware that there was a general likelihood of inappropriate behavior occurring if supervision of the campers was lacking. There were procedures put in place by the camp to prevent such behavior and to deal with the behavior if it occurred. Thus, our holding does not expand the liability of this camp to any and every situation in which a person is supervising a child, like the parade-of-horribles argument presented by the defendant would suggest. Our ruling simply holds that, on the facts before us in this particular case, this defendant had a duty to this plaintiff to adequately supervise and protect him. Whether Shohola breached that duty is a question to be decided by a jury. Thus, there has been no clear error of law, and the defendant's motion to reconsider will be denied.

### III. <u>Order</u>

AND NOW, this 12th day of April 2019, in accordance with this memorandum, the defendant's motion for reconsideration is DENIED. In light of this ruling, a brief telephonic case management conference would be in order to discuss the future course of this litigation. Accordingly, subject to counsel's availability, a telephonic case management conference will be held in the above-

captioned case on **April 23, 2019** at **10:00 a.m.**.  The plaintiff shall initiate the call, ensuring that all parties are on the telephone line, before contacting the Court at telephone number 717-614-4120.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge