# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.D., | : | Civil No. 3:16-CV-1056 |
| Plaintiff | : | |
| v. | : | (Magistrate Judge Carlson) |
| SHOHOLA CAMP GROUND AND RESORT, | : | |
| Defendant | : | |

## MEMORANDUM ORDER

### I. Factual Background

On June 3, 2016, plaintiff R.D. brought claims of battery, negligence and negligent hiring and supervision in connection with an episode of alleged sexual abuse, which occurred when the plaintiff participated in a camping excursion as a minor that was conducted by the defendant, Shohola Camp Ground and Resort. In the course of this excursion, it is alleged that another camper, identified as N.S., sexually assaulted the plaintiff, and may have had inappropriate sexual contact with two other minors who shared a tent with the plaintiff and N.S. during this excursion. The two other minors are identified in these proceedings as G.M. and E.J.

For the past two years, the parties have been embroiled in a discovery dispute in this case relating to the defendant's motion to quash a subpoena to appear and

testify at a deposition issued by the plaintiff to Gary Trobe, an investigator for the defendant. (Doc. 136.) This subpoena sought to schedule Trobe's deposition to inquire into alleged witness intimidation by Trobe of E.J. or G.M. The question of whether Trobe should be deposed, and the scope of any deposition, were issues addressed by the trial court, and more recently on April 24, 2019, by the Court of Appeals. As a result of this litigation, many matters that previously divided the parties have been resolved.

> At the outset the Court of Appeals held that:
>
> We agree with Magistrate Judge Carlson's conclusion (affirmed by the District Court) that R.D. made a sufficient threshold showing that Trobe tried to influence E.J. E.J. testified that: Trobe informed him the police might contact him about the incident; he felt intimidated by Trobe; and he subsequently retained counsel after meeting with Trobe. While neither the Magistrate Judge nor the District Court cited the Appeal of Hughes standard, these statements meet the "reasonable basis" threshold because they provide "more than groundless suspicion" that Trobe might have engaged in misconduct. 633 F.2d at 291. So we will affirm the portion of the District Court's order allowing R.D. to depose Trobe on the narrow issue of whether he attempted to intimidate E.J. We leave it to the sound discretion of the District Court to determine how to oversee the conduct of Trobe's deposition to ensure that Shohola's attorney work product is protected to the fullest extent possible under the circumstances.

R.D. v. Shohola, Inc., 769 F. App'x 73, 75–76 (3d Cir. 2019).

However, to the extent that plaintiff's counsel wished to depose Trobe regarding his communications with a second witness, G.M., the appellate court found that:

> [T]he allegation that Trobe tried to influence G.M. is weaker under this standard. Unlike E.J., G.M. did not testify he felt intimidated by Trobe. However, he said Trobe was persistent in arranging a meeting and tried to influence the wording of his statement. Because this evidence is not as strong as E.J.'s testimony and the District Court has not yet examined it under the Appeal of Hughes standard, we will vacate and remand the Court's determination that R.D. can question Trobe about potential misconduct involving G.M. On remand, the District Court should determine whether, consistent with Appeal of Hughes, Trobe can be asked about his interactions with G.M.

Id. at 76.

Having authorized this deposition of Trobe relating to his communications with E.J., and instructed us to determine whether a sufficient showing has been made to permit the deposition of Trobe concerning his communications with G.M., the Court of Appeals went on to endorse our prior guidance to the parties that we could, in the exercise of our discretion, fashion means to protect privileged matters while permitting proper, limited questioning of Trobe. As the appellate court explained:

> We conclude by recognizing the validity of Shohola's concern that a deposition narrowly tailored to witness intimidation could still reveal protected work product. As the District Court noted previously, it has various tools at its disposal to manage this situation. We endorse the District Court's decision to uphold several aspects of the Magistrate Judge's deposition order, such as reserving Shohola's right to file a later motion *in limine* for divulged work product and offering to hold the deposition in the courthouse to moderate disputes. The District Court might also require the parties to submit written questions, and it might choose to supervise the deposition. After the District Court makes a determination about Trobe's alleged misconduct with G.M., we leave to the District Court's discretion the task of policing the scope of protected work product during Trobe's deposition

Id.

3

Having received this clarifying guidance from the Court of Appeals, we then afforded the parties the opportunity to submit briefs regarding the conduct of this deposition. (Doc. 250.) The parties have fully briefed this issue, (Docs. 251, 255), and this longstanding question is now ripe for resolution.

We note that in the course of the briefing by the parties, the issues in this litigation have been further narrowed. For example, while it appeared at one time that the plaintiff wished to separately question Trobe regarding alleged witness intimidation of G.M., an issue which was remanded for further consideration by this court, plaintiff's current position is that they do not wish to question Trobe concerning intimidation of G.M., but rather may simply seek to question Trobe about his conduct towards G.M. as part of their effort to show that Trobe improperly attempted to intimidate E.J. In short, instead of attempting to show that both E.J. and G.M. were intimidated by Trobe, the plaintiff's counsel now suggest that any questions directed at Trobe concerning his contacts with G.M. would be intended to contrast his relatively mild treatment of this witness with what they regard as more severe treatment of E.J. Accordingly, we understand that the plaintiff will not attempt at this juncture to show that Trobe attempted to intimidate G.M.

Likewise, a second issue raised by the parties concerning the conduct of this deposition has now been resolved through briefing. Noting that the topic of this limited deposition was alleged intimidation of a witness, E.J., by Mr. Trobe, a

4

defense investigator, the plaintiff insisted that it would be inappropriate for defense counsel to participate in the deposition as counsel for Trobe. While the defense does not agree with the concerns voiced by the plaintiff, they have stated that Trobe will be represented by his own counsel at this deposition, thus eliminating this issue.

With all of these questions resolved, the sole matter of dispute concerns how the deposition will be conducted. On this score, Shohola recommends a deposition on written questions under Rule 31, following up on a suggestion discussed at oral argument before the Court of Appeals. The plaintiff's counsel, in turn, urges us to permit an oral deposition conducted here at the federal courthouse under our direct supervision.

For the reasons set forth below, we will decline the invitation to conduct the deposition by written questions, but will instead direct the parties to schedule the deposition at the courthouse subject to our supervision.

**II.      Discussion**

Several basic guiding principles inform the exercise of our discretion in this matter. At the outset, we note that the Court of Appeals has plainly stated that it "leave[s] to the District Court's discretion the task of policing the scope of protected work product during Trobe's deposition." R.D. v. Shohola, Inc., 769 F. App'x 73, 76 (3d Cir. 2019). In our view, the exercise of this discretion extends to judgments regarding whether oral or written depositions are preferable means for securing a

witness' testimony. See Abulkhair v. Citibank & Assocs., 434 F. App'x 58, 62 (3d Cir. 2011). Indeed, we construe the Court of Appeals as expressly conferring such discretion upon us when it stated that:

> We endorse the District Court's decision to uphold several aspects of the Magistrate Judge's deposition order, such as reserving Shohola's right to file a later motion *in limine* for divulged work product and offering to hold the deposition in the courthouse to moderate disputes. The District Court might also require the parties to submit written questions, and it might choose to supervise the deposition. After the District Court makes a determination about Trobe's alleged misconduct with G.M., we leave to the District Court's discretion the task of policing the scope of protected work product during Trobe's deposition

R.D. v. Shohola, Inc., 769 F. App'x 73, 76 (3d Cir. 2019).

The choices proffered by the parties fall within the range of appropriate options previously identified in this case: a choice between a live oral deposition, and the process of preparing written responses to questions propounded in writing. In considering a proposal to substitute written questions for an oral deposition, however, we are mindful of the fact that: "Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation. Accordingly, depositions upon written questions are disfavored. See Horvath v. Deutsche Lufthansa, AG, No. 02 Civ. 3269, 2004 WL 241671, at *3-4 (S.D.N.Y. Feb. 9, 2004); Sadowski v. Technical Career Institutes, Inc., No. 93 Civ. 455, 1994 WL 240546, at *1 (S.D.N.Y. May 27, 1994); Mill-Run

Tours, Inc. v. Khashoggi*,* 124 F.R.D. 547, 549 (S.D.N.Y.1989)." Zito v. Leasecomm Corp., 233 F.R.D. 395, 397 (S.D.N.Y. 2006). Simply put, as:

> Charles Alan Wright has explained, "[t]he advantage of a deposition on written interrogatories is that counsel for the parties need not go to some distant place to be present at the taking of the deposition.... Though Rule 31 appears to offer a saving in expense where the deposition is to be taken at some faroff place, its advantages are largely illusory. The procedure is more cumbersome than an oral examination, and is less suitable for a complicated inquiry, or for a searching interrogation of a hostile or reluctant witness." Wright, Discovery*,* 35 F.R.D. 39, 59 (1963); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2132 (3d ed. 2014) ("One of the obvious difficulties with Rule 31 is that it is hard to formulate cross, redirect, or recross questions before the answers to earlier questions are known. This lack of flexibility, which afflicted the old Chancery procedure, undoubtedly is one of the reasons for the infrequent use of the procedure.").

Scott v. Chipotle Mexican Grill, Inc., 306 F.R.D. 120, 125 (S.D.N.Y. 2015).

Therefore, while the defendant urges us to follow the course charted by another magistrate judge in Fidelity Management. & Research Co. v. Actuate Corp., 275 F.R.D. 63, 65 (D. Mass. 2011), and only permit written deposition questions, in the exercise of our discretion we will decline to do so, since we appreciate the value of oral deposition testimony in this setting where we may be presented with "a complicated inquiry, or . . . a searching interrogation of a hostile or reluctant witness." Scott, 306 F.R.D. at 125. We do, however, fully endorse the observation of the court in Fidelity Management, supra, that when deposing a party's investigator:

> [T]here is a possibility that a discussion of factual matters may reveal counsel's tactical or strategic thoughts.' Id. at 443 (citing Powell v. United States Dept. of Justice, 584 F.Supp. 1508, 1520 (N.D.Cal., 1984)). 'The work product privilege protects intangible work product as well as what Fed.R.Civ.P. 26(b)(3) calls "documents and tangible things".' Nesse, etc. v. Pittman, 202 F.R.D. 344, 356 (D.D.C., 2001) (citing Alexander v. FBI, 192 F.R.D. 12, 17 (D.D.C., 2000); Athridge v. Aetna Cas. & Sur.Co., 184 F.R.D. 200, 209 (D.D.C., 1998); Laxalt, 116 F.R.D. at 441; Delco Wire & Cable, Inc. v. Weinberger, 109 F.R.D. 680, 691 (E.D.Pa., 1986)). As a result, at a deposition of an investigator, counsel must '... carefully tailor his questions in the deposition, so as to elicit specific factual material, and avoid broad based inquiries, ... which could lead to the disclosure of trial strategies.' Laxalt, 116 F.R.D. at 443 (citing Powell, 584 F.Supp. at 1520).

Fid. Mgmt. & Research Co. v. Actuate Corp., 275 F.R.D. 63, 64 (D. Mass. 2011).

Therefore, in conducting this deposition, counsel are instructed that they "must '... carefully tailor [the] questions in the deposition, so as to elicit specific factual material, and avoid broad based inquiries, ... which could lead to the disclosure of trial strategies.'" Id. at 64. Further, Trobe "is not required to supply counsel's view of the case, [or] identify the facts which counsel considers significant, . . . as this type of information would fall under the category of mental impressions which are protected under Rule 26(b)(3)." Eoppolo v. Nat'l R.R. Passenger Corp., 108 F.R.D. 292, 294 (E.D. Pa. 1985). Instead, questions posed to Trobe must be limited to eliciting specific factual responses "on the narrow issue of whether he attempted to intimidate E.J." R.D. v. Shohola, Inc., 769 F. App'x 73, 75–76 (3d Cir. 2019).

Moreover, given the plaintiff's concession that R.D. is not seeking to question Trobe regarding intimidation of G.M., and acknowledging that the "allegation that Trobe tried to influence G.M. is weaker," id. at 76, we believe that the form of comparative interrogation proposed by plaintiff's counsel, which would question how and why different approaches were allegedly taken by Trobe in his communications with G.M. and E.J., is fraught with peril that the questions concerning investigative strategy in dealing with these two witnesses will encroach upon privileged matters. Therefore, as to this line of questioning, we will require plaintiff's counsel to provide the court and defense counsel with advance notice of any proposed questions, and an offer of proof regarding how the question is relevant but does not intrude upon privileged matters.

Further, in order to ensure the narrow focus of the deposition, we will instruct the parties to schedule the deposition at the federal court house, so we may directly oversee this questioning. In prescribing that the deposition be conducted at this location we note that: "The court has considerable discretion in determining the place of a deposition." Philadelphia Indem. Ins. Co. v. Fed. Ins. Co., 215 F.R.D. 492, 495 (E.D. Pa. 2003). See Aerocrine AB v. Apieron Inc., 267 F.R.D. 105, 108 (D. Del. 2010) ("district courts have great discretion in designating the location of a deposition, 'and thus each application must be considered on its own facts and equities.' South Seas Catamaran, Inc. v. The Motor Vessel "Leeway," 120 F.R.D.

9

17, 21 (D.N.J.1998).")." In our view, on-site supervision of the deposition of Gary Trobe is particularly appropriate in this case, since this deposition may raise sensitive privilege issues and past experience suggests that disputes may arise between the parties in the course of this deposition..

In sum, we anticipate a deposition through oral testimony, but oral testimony that will be exceedingly narrow in its scope. Given the tightly focused testimony that we will permit, the parties may wish to consider the value of this deposition. However, if the parties wish to conduct this deposition, they should identify mutually convenient dates for this deposition and then contact Kevin Neary, Deputy Clerk, at: (717) 221-3924 or Kevin_Neary@pamd.uscourts.gov., to schedule this deposition.

An appropriate order follows.

### III. Order

AND NOW, this 10th day of July 2019, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiff may conduct an oral deposition of Gary Trobe on the narrow issue of whether Trobe attempted to intimidate or influence the testimony of non-party witness E.J. at the U.S. Courthouse, Harrisburg, Pennsylvania, at a date and time to be approved by the court. This order is entered without prejudice to the defendant's ability to file a later motion *in limine* after the close of discovery in the event that the defendant believes that the plaintiff's questioning of Trobe impermissibly delves into opinion work product, or is

otherwise inadmissible. IT IS FURTHER ORDERED the parties are instructed to contact Courtroom Deputy Kevin Neary to arrange a date and time to conduct the deposition.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge