## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.D., | : | Civil No. 3:16-CV-01056 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| SHOHOLA, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.   Factual Background

In the instant case, we are now called upon to consider the degree to which science can usefully help inform a jury's consideration of the vagaries of the human mind and the mysteries of human recollection of events.

This case involves allegations of negligence by the defendant, Shohola, Inc., during a July 2007 Cape Cod camping excursion conducted by the defendant. In the course of this excursion, four minors—N.S., R.D., G.M., and E.J.[1]—were placed together in a tent without any immediate, direct adult supervision. What transpired in that tent twelve years ago lies at the heart of this lawsuit. As to these events, the witnesses provide accounts that are to some degree inconsistent with

---

[1] To protect the privacy of these minors they will be identified only by initials in this opinion.

one another, and the statements of some witnesses contain internal contradictions and inconsistencies. Thus, with respect to the critical events in this case, we are presented with an illustration of what is referred to as the Rashomon effect—divergent recollections of a singular event by witnesses to that event. For example, the plaintiff, R.D., has at various times described a sexual assault which he alleges he suffered at the hands of an older boy, N.S., in this tent, but as the defendant notes, R.D.'s descriptions of the precise nature of this assault and his assailant have varied over time. E.J., another minor who was in the tent, has provided a recorded statement in which he described a sexually charged game of truth or dare involving himself and N.S., although E.J.'s description of this episode has varied in some material details from R.D.'s narrative. The third boy in the tent, G.M., in turn, has disclaimed any direct knowledge of any of these events involving N.S., R.D. and E.J., but has also declined to actively dispute their accounts of these events.

As a result of this episode, R.D. alleges that he was the victim of sexual assault and suffered both physical and psychological injuries. The psychological harms that R.D. alleges were either caused by, or exacerbated by, this incident include post-traumatic stress disorder (PTSD), borderline personality disorder, bi-polar disorder, and depression. R.D. is now pursuing a negligence action against Shohola, arguing that in 2007, Shohola was negligent in the placement of an older teen, N.S., in this tent with younger boys, and in failing to more carefully oversee

these youths as they slept together since the danger of potential sexualized, non-consensual and predatory behavior was readily foreseeable in this setting, and was in fact foreseen by Shohola counsellors.

Given the claims and injuries alleged in this case by R.D., the workings of the human mind are critical to an informed evaluation of this case by the jury. Thus, in this case, the jury may be called upon to consider the vagaries of human memory, the potential effects of trauma on recollection, and two phenomena relating to recollection: repressed memories, that is recollections which have been subconsciously blocked due to trauma, and confabulation, a phenomenon in which individuals can experience sincerely held, but false or distorted recollections. It is against this factual backdrop that we consider various motions *in limine* which seek to shape, define and limit the expert psychological evidence which may be presented to the jury. (Docs. 174, 203 and 253.)

These motions seek pre-trial rulings addressing the proffered testimony of several medical witnesses. First, Shohola has filed two motions challenging the proposed anticipated testimony of Dr. Roger Pittman, an expert witness retained by the plaintiff. (Docs. 203, 253.) As described by the parties and as we understand it, Dr. Pittman has evaluated R.D., conducted a battery of tests on R.D., and reviewed documents relating to R.D. and this case. As a result of these clinical encounters, evaluations and tests, Dr. Pittman may be prepared to testify to a range of matters.

For example, Dr. Pittman could potentially testify that he has diagnosed R.D. as suffering from PTSD, bi-polar and borderline personality disorders, as well as depression. The plaintiff also proposes that Dr. Pittman is prepared to testify that sexual trauma can cause PTSD and contribute to the onset or exacerbation of these other disorders. In addition, it appears that the plaintiff may endeavor to elicit testimony from Dr. Pittman that R.D.'s symptoms and diagnoses are consistent with PTSD caused by sexual violence. Finally, the defense motions *in limine* raise a concern that Dr. Pittman may attempt to go even further in his testimony, in a way which could be seen as vouching for the credibility of R.D.'s account of his 2007 encounter with N.S., by specifically testifying that N.S.'s sexual assault caused R.D.'s PTSD, and contributed to the onset of his other emotional disorders. According to the defendant, many, if not all, of these lines of inquiries would be inappropriate and would overstep the bounds of proper expert testimony.

The plaintiff, in turn, has filed a motion *in limine* to exclude the testimony of two defense experts, Dr. Elizabeth Loftus and Dr. Renee Sorrentino. (Doc. 174.) Dr. Loftus is proffered as an expert witness who can testify to the inaccuracy and vagaries of human recollection. Dr. Sorrentino, in turn, has been proffered as an expert witness who could testify regarding whether sexual violence by N.S. was

specifically foreseeable.[2] According to the plaintiff, this proposed expert testimony is speculative, lacks scientific support, invades the province of the jury, and should, therefore, be excluded from the trial of this case.

Presented with these motions, our task is to define the degree to which scientific expert testimony on the working of the mind, and the factors which color and shape human recollection, would aid the jury in its search for the truth while ensuring that this expert testimony does not improperly intrude upon the cardinal

---

[2] The thrust of Dr. Sorrentino's proffered testimony as described in her expert report was that N.S.'s specific propensity for sexual violence was not foreseeable. (Doc. 175-1, pp. 90-3.) There are several problems with this proffered testimony, in our view. Initially, we have already held that the plaintiff's direct negligence claim may rest upon an allegation that some risk of harm when young boys are left unsupervised in tents was generally foreseeable, and need not be tied to the question of whether harms specifically committed by N.S. were foreseeable. *R.D. v. Shohola, Inc.*, No. 3:16-CV-01056, 2018 WL 5920640, at *6 (M.D. Pa. Nov. 13, 2018), *reconsideration denied,* No. 3:16-CV-01056, 2019 WL 1584600 (M.D. Pa. Apr. 12, 2019). Therefore, the focus of Dr. Sorrentino's testimony is misplaced and is not relevant to the remaining claim in this case. In any event, Dr. Sorrentino's report reveals that the doctor has never seen, treated, or examined N.S. and her assessment of foreseeability of risk is based upon reading exhibits and deposition transcripts which simply indicate that the defendants had no prior notice of sexual predation by N.S. While Dr. Sorrentino's recitation of this factual testimony may add a certain academic cachet to this evidence, it is not proper expert testimony. Further, the summary report of Dr. Sorrentino does not provide a basis for assessing the reliability of any expert opinion she may render regarding predicting future dangerousness of a particular person. Therefore, we would not permit this expert testimony at trial, absent some much more compelling showing of relevance, reliability, and fit.

function of the jury, which is to assess witness credibility. We undertake this task guided by the analytical paradigm for the assessment of expert opinions prescribed by Rule 702 of the Federal Rules of Evidence and the United States Supreme Court in *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), which call upon us to perform a gatekeeping function when evaluating proposed expert testimony and consider: "(1) the qualifications of the expert, (2) the reliability of the process or technique the expert used in formulating the opinion, and (3) the 'fit' between the opinion and the facts in dispute." *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 669 F. Supp. 2d 514, 519 (M.D. Pa. 2009) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-47 (3d Cir. 1994) ("*Paoli II*")).

While the resolution of these issues rests in the sound discretion of the court, given the constellation of factual matters which *Daubert* invites us to consider, oftentimes "[i]t would appear that the most efficient procedure that the district court can use in making the reliability determination is an *in limine* hearing." *United States v. Downing*, 753 F.2d 1224, 1241 (3d Cir. 1985). That is the course we will follow here. However, as a guide to the parties in preparation for this hearing, we write to discuss what we believe to be the proper potential scope of expert testimony in this case.

**II**.  **Discussion**

**A.**  **Motions in Limine, Rule 702, and the Rules Governing Expert Testimony**

Any consideration of the proper scope of expert witness testimony begins with Rule 702 of the Federal Rules of Evidence, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  that testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 envisions a "liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).

Following the Supreme Court's guidance in *Daubert*, the United States Court of Appeals for the Third Circuit has explained that the Rule provides for a "trilogy of restrictions on expert testimony: qualification, reliability and fit." *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir. 2003). Under the Rule, the trial judge acts as a "gatekeeper" to ensure that before it is presented to a jury, expert testimony is "both relevant and reliable." *Buzzerd v. Flagship Carwash*

*of Port St. Lucie, Inc.*, 669 F. Supp. 2d 514, 519 (M.D. Pa. 2009) (citing *Daubert*, 509 U.S. at 589). In cases where a party objects to the admissibility to proffered expert opinion testimony, the court must examine: "(1) the qualifications of the expert, (2) the reliability of the process or technique the expert used in formulating the opinion, and (3) the 'fit' between the opinion and the facts in dispute." *Id.* (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-47 (3d Cir. 1994) ("*Paoli II*")). In other words, a qualified expert's "testimony must [(1)] be based on sufficient facts and data; (2) must be the product of a reliable methodology; and (3) must demonstrate a relevant connection between that methodology and the facts of the case." *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 513 (3d Cir. 2005).

To be qualified to provide expert testimony, an expert must possess sufficient qualifications in the field, but this requirement is not overly restrictive. Thus, the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." *Paoli II*, 35 F.3d at 741. In other words, "an expert's qualifications should be assessed 'liberally,' recognizing that 'a broad range of knowledge, skills, and training qualify an expert as such.'" *Thomas v. CMI Terex Corp.*, Civil No. 07-3597, 2009 WL 3068242, at *5 (D.N.J. Sept. 21, 2009) (quoting *Paoli II*, 35 F.3d at 741). An expert will not be excluded "simply because [the court] does not deem the proposed expert to be the best qualified or because the proposed expert does not

have the specialization that the court considers most appropriate." *Holbrook v. Lykes, Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996). The focus, instead, is on whether the qualifications that an expert does have provide a foundation for the witness to testify meaningfully on a given matter. *See Buzzerd*, 669 F. Supp. 2d at 522 (citing *Rose v. Truck Centers, Inc.*, 611 F. Supp. 2d 745, 749 (N.D. Ohio 2009) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.") (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

Provided an expert is qualified to give opinion testimony in a given area, the testimony must also be reliable. Accordingly, a court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical leap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In determining whether proposed testimony is sufficiently reliable, courts are to consider the following factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli II*, 35 F.3d at 742 n.8. These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citation omitted); *accord Kannankeril*, 128 F.3d at 806-07 ("[T]hese factors are neither exhaustive nor applicable in every case."). Accordingly, the inquiry into reliability is flexible and depends upon the facts of each particular case. *Kumho Tire Co.*, 526 U.S. at 150.

The Third Circuit has noted that the reliability standard is "not intended to be a high one" and is not designed to be applied in a way that "requires the plaintiffs 'to prove their case twice – they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (quoting *Paoli II*, 35 F.3d at 743). Noting that this is "a very important distinction", *id.*, the Third Circuit explained that the proper test is whether the "particular opinion is based on valid reasoning and reliable methodology." *Id.* (quoting *Kannankeril*, 128 F.3d at 806). However, the court was careful to emphasize that "conclusions and methodology are not entirely distinct from one another," *id.* (quoting *Joiner*, 522 U.S. at 146), and that a court must therefore "examine the expert's conclusions in order to determine whether they could

reliably flow from the facts known to the expert and the methodology used." *Id.* (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)).

Closely tied to this inquiry, courts have found that opinion testimony is *not reliable* if it relies solely on the plaintiff's own claims of harm at the exclusion of reliance upon other scientific or technical information in order to test the plaintiff's allegations. *See, e.g., Steven J. Inc. v. Landmark Am. Ins. Co.*, Civ. A. No. 1:14-CV-0474, 2015 WL 3849166, at *6 (M.D. Pa. June 22, 2015) (Conner, C.J.) (excluding proffered expert witness's testimony because "his methodology falls far short of the required quantum of reliability" where the expert had relied exclusively on information provided by the plaintiffs' representatives regarding the harm alleged, but where the expert "was unable to verify these representations" on his own); *cf. Hayden v. Westfield Ins. Co.*, No. 12-0390, 2013 WL 5781121, at *8 (W.D. Pa. Oct. 25, 2013) (finding fault with expert's report where it failed to consider other factors that may have contributed to the damage at issue), *aff'd on other grounds*, 586 F. App'x 835 (3d Cir. 2014).

Likewise, although there may be some circumstances in which expert testimony will be admissible because it properly derives from the expert's knowledge and experience, *Oddi*, 234 F.3d at 158, the expert must nevertheless still establish that his methodology is reliable. *Steven J.*, 2015 WL 3849166, at *5. It is insufficient for an expert to offer an opinion that is based on no more than

subjective belief or an unsupported speculation. *Oddi*, 234 F.3d at 158; *Kemmerer v. State Farm Ins. Co.*, No. 01-5445, 2005 WL 87017, at *3 (E.D. Pa. Jan. 19, 2004) (noting that expert's opinion testimony is inadmissible if it expresses only possibilities).

In addition to the requirement that an expert be qualified and to have based his opinions on reliable methodology, an expert's proffered testimony must also "fit" the subject matter of the dispute. The Supreme Court has explained that "fit" is the "require[ment] that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. . . . Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations omitted). Expert testimony will meet this standard where "there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case.") *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009).

Evaluation of proffered expert witness testimony, in turn, takes place against the backdrop of rules which generally favor the admission of all relevant information. Thus, Rule 402 of the Federal Rules of Evidence expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." *United States v. Sriyuth,* 98 F.3d 739, 745 (3d Cir.1996) (citations

omitted). While these principles favoring inclusion of evidence are subject to some reasonable limitations, even those limitations are also cast in terms that clearly favor admission of relevant evidence over preclusion of proof in federal proceedings. Thus, Rule 403, which provides grounds for exclusion of some evidence, describes these grounds for exclusion as an exception to the general rule favoring admission of relevant evidence, stating that:

> Although relevant, evidence may be excluded if its probative value *is substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

Although Rule 403 is discretionary, and often will result in courts deferring until trial rulings on the admissibility of relevant proof, *Daubert* teaches that courts must also be mindful of the influence of expert opinion testimony in jury proceedings: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing the possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (quoting *Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended*)). Therefore, we should exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or

irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so since these broad principles favoring the admission of relevant evidence also shape and define the scope of this Court's discretion in addressing motions *in limine* like those filed here. In the past, the Third Circuit has cautioned against such preliminary and wholesale exclusion of evidence, noting that it has "made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine.*" *Walden v. Georgia–Pacific Corp.,* 126 F.3d 506, 518 n. 10 (3d Cir.1997). The reason for this caution is evident: oftentimes a court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *Id.; see also In re Diet Drugs Products Liability Litigation,* 369 F.3d 293, 314 (3d Cir.2004). As the Court of Appeals has observed when advising against excessive reliance on motions *in limine* to exclude evidence under Rule 403:

> [M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation. *American Home,* 753 F.2d at 324; *cf. Luce v. United States,* 469 U.S. 38, 41–42, 105 S.Ct. 460, 463–64, 83 L.Ed.2d 443 (1984) (holding that criminal defendant must testify to preserve claim of improper impeachment with prior conviction) ("The [*in limine* ] ruling is subject *198 to change when the case unfolds, particularly if the actual testimony differs from what

14

was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). This is particularly true when the evidence is challenged as irrelevant or prejudicial; the considerations weighed by the court will likely change as the trial progresses. *See Rosenfeld v. Basquiat,* 78 F.3d 84, 91 (2d Cir.1996) ("Unlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound and no real purpose other than form would have been served by a later objection."). We have also made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine.* "[A ] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." *Paoli I,* 916 F.2d at 859; *see also In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 747 (3d Cir.1994) ( "*Paoli II*" ). Under these and similar circumstances, if a district court makes a tentative pre-trial ruling, it has the opportunity to "reconsider [its] in limine ruling with the benefit of having been witness to the unfolding events at trial." *United States v. Graves,* 5 F.3d 1546, 1552 (5th Cir.1993).

*Walden,* 126 F.3d at 518 n. 10.

The Third Circuit has thus cautioned that "pretrial Rule 403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990); *see also Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage"). Moreover, the Third Circuit has characterized

Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859.

### B. Application of These Principles to The Parties' Proffered Expert Testimony Regarding PTSD, Sexual Trauma, Causation and False or Fallible Recollection

In the instant case, we must consider in the first instance how to apply these guiding principles to Dr. Pittman's expert testimony regarding R.D.'s diagnosis of PTSD, bi-polar and borderline personality disorders, and depression, as well as any causal connection Dr. Pittman attempts to draw between these conditions and any sexual violence that R.D. may have experienced, including sexual violence at the hands of N.S. while under the care of Camp Shohola staff. In addressing these issues, we do not write upon a blank slate. Quite the contrary, other courts have paved the way, striking the balance between the permissible scope of expert witness testimony concerning PTSD diagnoses and causation, and testimony which improperly encroaches upon the fact-finding prerogatives of the jury. *See e.g., Tardif v. City of New York*, 344 F. Supp. 3d 579, 596 (S.D.N.Y. 2018); *Clark v. Edison*, 881 F. Supp. 2d 192, 201 (D. Mass. 2012); *Discepolo v. Gorgone*, 399 F. Supp. 2d 123 (D. Conn. 2005); *Isely v. Capuchin Province*, 877 F. Supp. 1055, 1057 (E.D. Mich. 1995). Notably, a number of these decisions collected cases from

across the United States that speak to these questions and addressed this issue in the very factual context presented here: allegations of PTSD and related ailments allegedly caused by a specific act of sexual violence. *Clark v. Edison*, *supra*; *Discepolo v. Gorgone*, *supra*; *Isely v. Capuchin Province*, *supra*.

These cases provide several useful guideposts for us in assessing the proffered testimony of Dr. Pittman. At the outset, on one hand, assuming that Dr. Pittman is qualified to render medical opinions in this field, and subject to any inquiry into the sufficiency of the means by which the doctor arrived at his diagnosis, these cases would generally permit testimony concerning the diagnosis of R.D. as suffering from PTSD. *Id.* Moreover, courts have also typically permitted general testimony that PTSD, or post traumatic stress disorder, is caused by some emotional trauma, which may include sexual violence. *Id.*

On the other hand, those courts that have considered this type of expert testimony uniformly agree that allowing the expert to testify in a fashion which opines as to the credibility of the plaintiff's specific allegations of sexual abuse is improper, over-reaching, and intrudes into the core function of the jury, assessing witness credibility. *See Isely v. Capuchin Province*, 877 F. Supp. 1055, 1067 (E.D. Mich. 1995) ("It is clear to the Court that, based even on her own testimony, [t]he [expert] should not be permitted to testify that she either believes Mr. Isely or believes that the incidents he alleges occurred. . . .") *cited by Discepolo v.*

*Gorgone*, 399 F. Supp. 2d 123, 130 (D. Conn. 2005). As one court as observed: "The principal danger in admitting th[is] testimony is the possibility that the jury will interpret the expert's testimony, explicitly or implicitly, as an opinion that the plaintiff is credible." *Clark v. Edison*, 881 F. Supp. 2d 192, 216 (D. Mass. 2012). Therefore, as a general rule "experts may not opine as to the credibility of plaintiff's memories or as to whether the alleged abuse actually occurred, and the Court will underscore that point to the jury with appropriate instructions and cautions." *Clark*, 881 F. Supp. 2d at 217.

Given these areas of emerging legal consensus, the principal remaining area of legal discord entails the question of what other expert testimony may be permitted, beyond a diagnosis of PTSD and general testimony that PTSD is caused by some emotional trauma, including sexual violence. On this issue, courts are divided. Some courts, presented with strong evidence tying the plaintiff's PTSD to sexual violence of some sort, have permitted the expert witness to further testify that the plaintiff's PTSD symptoms "are consistent with" PTSD triggered by sexual trauma without allowing the expert to vouch for the plaintiff's credibility by testifying that any particular trauma alleged by the plaintiff caused these symptoms.. *See e.g*., *Clark v. Edison, supra; Isely v. Capuchin Province, supra* (collecting cases). In other instances, where the causal connection between PTSD and a specific form of trauma has been less precise, courts have exercised their

discretion to preclude such testimony. *Tardif v. City of New York*, 344 F. Supp. 3d 579, 597-604 (S.D.N.Y. 2018).

Further case law acknowledges that the proponent of this form of psychiatric expert testimony may not avoid the need to demonstrate a causal connection between the diagnosis and some type of traumatic event by simply asserting that the trauma exacerbated a mental condition. As one court has noted, such "parsing [between conditions caused by an event and those exacerbated by some event] is unhelpful. Regardless of the original cause of [a plaintiff's] mental disorders . . . to conclude that Defendants' conducted exacerbated [the plaintiff's condition] requires a finding that Defendants *caused* that exacerbation." *Id.* at 602.

We believe that all of these issues which relate to the proper scope of Dr. Pittman's testimony require further development of the factual record through s *Daubert* hearing.

Case law also recognizes a countervailing concept in cases involving sexual trauma PTSD claims: Where the proponent of a PTSD claim is permitted expert testimony, properly focused rebuttal expert testimony should also be allowed. *See e.g.*, *Tardif v. City of New York, supra; Clark v. Edison, supra.* Thus, in these circumstances, courts have permitted rebuttal expert testimony challenging a diagnosis of PTSD, *Tardif v. City of New York, supra,* or contesting testimony

regarding the scientific support for the concept of repressed memories. *Clark v. Edison, supra.*

This latter point sets the stage for consideration of Dr. Loftus' proposed expert testimony. In our view, Dr. Loftus' expert report, (Doc. 175-1, pp. 83-6), is intended as an expert rebuttal report attacking the conclusions reached by Dr. Pittman. While this is a proper purpose for an expert report, the plaintiff argues that there are several potentially problematic aspects to Dr. Loftus' report. First, to the extent that Dr. Loftus's report consists of little more than a generalized attack upon the vagaries of human recollection, the plaintiff contends courts have been reluctant to permit such testimony, reasoning that the uncertainties that may cloud our ability to recall are matters within the ken of jurors that do not require expert testimony. This rationale has been relied upon by other courts to exclude similar proffered testimony of a general nature relating to the uncertainty of human recollection. *United States v. Libby,* 461 F. Supp. 2d 3, 10 (D.D.C. 2006) (excluding expert testimony, including testimony by Dr. Loftus). While this may be so, we are also constrained to observe that, in the context of a criminal sexual assault case, the Court of Appeals has held that that it was error to categorically exclude expert testimony regarding errors and subconscious influences in eyewitness recollection. *United States v. Stevens*, 935 F.2d 1380, 1400 (3d Cir.

1991). Thus, development of a factual record through a *Daubert* hearing is essential to a fully-informed resolution of this question.

Similarly, Dr. Loftus' report contains a critique of the scientific validity of the concept of repressed memory, the idea that traumatic memories may be subconsciously suppressed but accurately recovered many years later. In cases where repressed memory is an issue, courts have recognized that rebuttal expert testimony challenging the scientific support for the concept of repressed memories may be appropriate. *Clark v. Edison, supra.* The plaintiff, however, insists that this proffered expert testimony would be inappropriate since R.D. does not allege that he experienced a repressed memory; he simply insists that he delayed in reporting this alleged sexual assault for a period of time. Therefore, further clarification of the claims and defense to be presented at trial through a *Daubert* hearing would be central to the resolution of this particular issue.

### C.    Conclusions

Based upon the foregoing legal analysis, we reach the following conclusions regarding the parties' competing motions relating to expert witness testimony regarding the psychological issues presented in this case.

First, to the extent that the parties' motions sought to categorically exclude expert testimony (Docs. 174, 203, 253), without a further *Daubert* hearing, the motions are DENIED.

Second, we will schedule a *Daubert* hearing in this case on **September 13, 2019 at 10:00 a.m.** at a location to be selected in consultation with counsel.

Third, pending this hearing, and subject to any supplemental findings made by the Court based upon information presented at the hearing, IT IS ORDERED that: "experts may not opine as to the credibility of plaintiff's memories or as to whether the alleged abuse actually occurred, and the Court will underscore that point to the jury with appropriate instructions and cautions." *Clark v. Edison*, 881 F. Supp. 2d 192, 217 (D. Mass. 2012).

Fourth, pending this hearing, and subject to any supplemental findings made by the Court based upon information presented at the hearing, for the reasons set forth in this Memorandum Opinion IT IS ORDERED that the proffered testimony of Dr. Sorrentino will be excluded from the trial of this case, unless the proponent of that testimony provides a more detailed and fulsome offer of proof which demonstrates the relevance of this testimony, and shows both the reliability and fit of the doctor's opinion to the remaining issues in this case.

Fifth, in preparation for this hearing, on or before **September 9, 2019**, the parties shall file status reports advising the court regarding the following matters: (1) whether any party contests the qualifications of the proposed medical expert witnesses; (2) whether any party contests R.D.'s PTSD diagnosis; and (3) whether

the parties have reached agreement on any other aspects of the scope of the proposed expert witness testimony.

Sixth, at the *Daubert* hearing, the parties should specifically be prepared to address the proper scope of the proposed testimony of Dr. Pittman and Dr. Loftus, and specifically be prepared to address: (1) whether Dr. Pittman should be permitted to testify that R.D.'s PTSD is consistent with sexual trauma; (2) whether the evidence provides sufficient proof of causation to allow Dr. Pittman to testify regarding exacerbation of R.D.'s bi-polar and borderline disorders, and depression; and (3) to what degree may Dr. Loftus provide rebuttal testimony relating to human recollection. The parties' positions on these questions should also be presented to the court in the status reports filed on **September 9, 2019**.

An appropriate order follows.


*S/Martin C. Carlson*
MARTIN C. CARLSON
United States Magistrate Judge