# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| "R.D.,"           | : | Civil No. 3:16-CV-01056       |
|                   | : |                               |
| **Plaintiff,**    | : |                               |
|                   | : |                               |
| v.                | : | (Magistrate Judge Carlson)    |
|                   | : |                               |
| **SHOHOLA, INC.,**| : |                               |
|                   | : |                               |
| **Defendant.**    | : |                               |

## MEMORANDUM OPINION AND ORDER

### I.   Statement and Facts of the Case

The plaintiff, "R.D.," commenced this action on June 3, 2016, alleging that the defendant, Shohola, Inc., is liable to him for the injuries he incurred when he was sexually assaulted on one of the defendant's overnight camping trips. The second amended complaint asserted claims of negligence, negligent supervision, battery, and negligence *per se*, and sought compensatory and punitive damages, as well as attorney's fees, for the physical and emotional harm the plaintiff suffered. (Doc. 27).

Following roughly two years of discovery in this case, the defendant filed a motion for summary judgment. (Doc. 202). This court granted the motion with respect to the plaintiff's negligent supervision, battery, and negligence *per se* claims, but denied the motion with respect to the direct negligence claim. (Doc. 230). We concluded that Shohola had a general duty of care to adequately protect and

supervise its minor campers under the Restatement (Second) of Torts §§ 314A and 315, given the relationship between the campers and the camp.

Now, in anticipation of trial, the plaintiff has filed the instant motion *in limine* to preclude the use of, or any reference to, documents that were not exchanged in discovery, which include excerpts from the plaintiff's social media accounts and excerpts from writings authored by the plaintiff.[1] (Doc. 347). The plaintiff contends that these documents were not exchanged in discovery and should therefore be precluded, and additionally, that the excerpts are not relevant to the claims in the instant case. For its part, Shohola contends that the excerpts are relevant to the plaintiff's claims for future pain and suffering and loss of enjoyment of life. Further, the defendant contends that its late disclosure of these documents should be permitted, as the plaintiff was permitted to submit documents after the discovery deadline.

After consideration, and for the reasons set forth below, we will grant the plaintiff's motion and prohibit the defendants from using these documents in its case-in-chief. However, at trial, the defendant may be permitted to inquire into these areas on cross examination.

---

[1] While the defendant initially sought to introduce evidence of another individual's social media account, as well as an article on "brainspotting," the defendant has withdrawn its position that it intends to introduce these documents as exhibits. (Doc. 352 at 3).

## II. **Discussion**

The plaintiff contends that the defendant should be precluded from using the late-submitted documents because Shohola has failed to comply with the discovery mandates in Federal Rule of Civil Procedure 26(a). Rule 26(a)(1)(A)(ii) states that:

> [A] party must, without awaiting a discovery request, provide to the other parties: . . . a copy--or description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(1)(A)(ii). In addition, Rule 26(e) provides that a party must supplement its initial disclosures under Rule 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

In the same vein, Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required in Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the non-producing party to prove substantial justification or that its failure to produce was harmless. U.S. Fire Ins. Co. v. Omnova Solutions, Inc., No. 10–1085, 2012 WL 5288783, at *2 (W.D. Pa. Oct. 23, 2012).

The Third Circuit Court of Appeals has set forth several factors for courts to consider when deciding whether the exclusion of evidence is an appropriate sanction for the delayed production of evidence : "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000) (citing Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997)). The Court has supplemented this list of factors to include: "(5) 'the importance of the excluded testimony' and (6) the party's explanation for failing to disclose." Dzielak v. Whirlpool Corp., 2017 WL 1034197, at *29 (D.N.J. Mar. 17, 2017) (citing Konstantopoulos, 112 F.3d at 719). However, we are reminded that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977) (internal citations omitted); Dzielak, 2017 WL 1034197, at *29.

In the instant case, we find that a consideration of the factors set forth by the Court of Appeals weighs in favor of the exclusion of these documents. At the outset,

4

we note that the defendant attempts to equate its late disclosure with the plaintiff's disclosure of R.D.'s ongoing treatment records in the Summer of 209. However, in our view, these disclosures are in stark contrast, with the plaintiff submitting the treatment records in July 2019—nearly five months before trial—and the defendant submitting these records just weeks before trial. Additionally, there was no reason given by counsel as to why these documents could not have been disclosed earlier. Although counsel stated that Shohola obtained these documents in September 2019, many of the excerpts, particularly from the plaintiff's Facebook page, show posts dating back to May 2019, and one excerpt contains an article dated March 13, 2018. Thus, we are not persuaded that this late disclosure, made just weeks before trial is set to begin, should be permitted.

Moreover, and significantly, we conclude that this late disclosure of these records as substantive evidence undoubtedly surprised and will prejudice the plaintiff. Not only did Shohola disclose these records just weeks before trial is set to begin, but the intended use of these records is potentially prejudicial. Shohola maintains that the excerpts from the plaintiff's social media are relevant to his damages claims for pain and suffering and loss of enjoyment of life because they depict instances where R.D. is not obviously in distress. This may be so, but we also observe that some of the selected materials also seem to highlight potentially prejudicial issues of sexuality and sexual identification, matters that we have already

5

determined should be approached with extreme caution at trial. Thus, this relevance of this material as substantive evidence may be slight, but its potential for prejudice is great.

For his part, the plaintiff contends that snapshots of his social media, *i.e.* his Facebook page, are not relevant to his claim for emotional distress damages. On this score, courts have taken different approaches in determining the relevance of social media postings as they relate to claims for emotional distress damages. Some courts have held that social media postings may be relevant to a plaintiff's claim for emotional distress damages. See e.g., Hinostroza v. Denny's Inc., 2019 WL 3212014, at *6 (D. Nev. June 29, 2018) ("[I]nformation from social media is relevant to claims of emotional distress because social media activity, to an extent, is reflective of an individual's contemporaneous emotions and mental state"); Reid v. Ingerman Smith LLP, 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27, 2012). Other courts have held that social media postings in general, such as "routine status updates and/or communications," are not relevant to a plaintiff's claim for emotional distress damages. See Marsteller v. Butterfield 8 Stamford LLC, 2017 WL 5769903, at *3 (D. Conn. Nov. 27, 2017); see also Giacchetto v. Patchogue-Medford Union Free Sch. Dist., 293 F.R.D. 112, 116 (E.D.N.Y. 2013) ("The fact that an individual may express some degree of joy, happiness, or sociability on certain occasions shed little light on the issue of whether he or she is actually suffering emotional distress"). The

court in Giacchetto went as far as to opine that "the relationship of routine expressions of mood to a claim for emotional distress damages is . . . tenuous," and reasoned that "a severely depressed person may have a good day or several good days and choose to post about those days and avoid posting about moods more reflective of his or her actual emotional state." Id.; see also Smith v. Hillshire Brands, 2014 WL 2804188, at *5 (D. Kan. June 20, 2014).

On this score, we tend to agree with those courts that hold that routine social media posts are not relevant to a plaintiff's claim of emotional distress. Indeed, as the court in Giacchetto noted, simply because an individual posts some snippets of his or her life on social media does not mean that he or she is not suffering from any emotional distress. Thus, the relevance factor weighs heavily against allowing Shohola to use these documents in its case-in-chief, particularly because the posts offered by the defendant are vague and do not speak to any particular aspect of the plaintiff's claim for emotional distress damages, but may implicate issues of sexuality which we have found to be potentially prejudicial. See Roberts v. Clark Cnty. Sch. Dist., 312 F.R.D. 594, 608 (D. Nev. 2016) (permitting social media disclosure but limiting the discovery to content referencing the lawsuit and the plaintiff's state of mind"); Voe v. Roman Catholic Archbishop of Portland in Oregon, 2015 WL 12669899 (D. Or. March 10, 2015) (limiting social media

discovery to events lodged in the plaintiff's complaint and those related to the plaintiff's mental health issues).

Accordingly, because the posts offered by the defendant are vague, generalized, and do not specifically reference this litigation or any claims made in this litigation, these posts will not be permitted in the defendant's case in chief. However, we do note that, if appropriate, the defendant may be permitted to inquire into these areas and use these materials for impeachment purposes on cross examination subject to any appropriate objections at trial. See Fed. R. Evid. 608(b) (permitting cross examination regarding specific conduct at the discretion of the court if probative of truthfulness).

### III. Order

For the foregoing reasons, the plaintiff's motion *in limine* seeking to bar the defendant's use of excerpts of the plaintiff's social media accounts and writings in its case-in-chief (Doc. 347), is GRANTED.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge