# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **"R.D.,"** | : | Civil No. 3:16-CV-01056 |
| **Plaintiff,** | : | |
| v. | : | (Magistrate Judge Carlson) |
| **SHOHOLA, INC.,** | : | |
| **Defendant.** | : | |

## MEMORANDUM AND ORDER

### I. Factual Background

The plaintiff, "R.D.," commenced this action on June 3, 2016, alleging that the defendant, Shohola, Inc., is liable to him for the injuries he incurred when he was sexually assaulted on one of the defendant's overnight camping trips. The parties are currently preparing for trial on the remaining negligence claims in this lawsuit. As trial approaches the parties have filed some 30 motions *in limine*, including two motions filed by the plaintiff, (Doc. 301, 347), and 28 motions submitted by the defendant. (Docs. 302-327, 360).

We now turn to consideration of two of these motions which are related to the question of punitive damages. First, defense motion *in limine* Number 27 asks the court to enter a pre-trial order barring all evidence and instruction in any form regarding punitive damages and striking plaintiff's claim for punitive damages.

(Doc. 329). Defense motion *in limine* Number 9, in turn, seeks to preclude evidence of the financial status of Shohola, arguing that this evidence is not relevant to the issue of compensatory damages. (Doc. 310). Since evidence of a defendant's financial status may be relevant to the question of punitive damages the unspoken premise of this motion is that no punitive damages claim should be submitted to the jury. Thus, the two motions are legally, logically and factually intertwined.

These two motions have been briefed and argued and are, therefore, ripe for resolution. For the reasons set forth below, the motions are DENIED to the extent that they seek to exclude this evidence and any punitive damages claims prior to trial. This order is entered without prejudice to renewal of these arguments at trial. In addition, as discussed below, we will prescribe a procedure for addressing these punitive damages issues at trial.

**I.      Discussion**

**A. Motions *in Limine*--Guiding Principles**

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases").

Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine* that call upon the Court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion ... Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.' " Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir.1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir.1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy that shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as

evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules, and their permissive attitude towards the admission of evidence, is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Adopting this broad view of relevance, it has been held that: "Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.' " Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994) (quotations omitted)).

4

This quality of inclusion embraced by the Federal Rules of Evidence, favoring the admission of potentially probative proof in all of its forms, is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). While these principles favoring inclusion of evidence are subject to some reasonable limitations, even those limitations are cast in terms that clearly favor admission of relevant evidence over preclusion of proof in federal proceedings. Thus, Rule 403, which provides grounds for exclusion of some evidence, describes these grounds for exclusion as an exception to the general rule favoring admission of relevant evidence, stating that:

> Although relevant, evidence may be excluded if its probative value **is substantially outweighed** by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

These broad principles favoring the admission of relevant evidence also shape and define the scope of this Court's discretion in addressing motions *in limine* like those filed by the parties here, which seek a pre-trial ruling excluding a considerable range of evidence largely on relevance and prejudice grounds. In the past the United States Court of Appeals for the Third Circuit has cautioned against such preliminary and wholesale exclusion of evidence, noting that it has "made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine."* Walden v. Georgia–Pacific Corp., 126 F.3d 506, 518 n. 10 (3d Cir. 1997). The reason for this caution is evident: oftentimes a court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." Id.; see also In re Diet Drugs Products Liability Litigation, 369 F.3d 293, 314 (3d Cir. 2004). As the Court of Appeals has observed

6

when advising against excessive reliance on motions *in limine* to exclude evidence under Rule 403:

> [M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation. American Home, 753 F.2d at 324; cf. Luce v. United States, 469 U.S. 38, 41–42, 105 S.Ct. 460, 463–64, 83 L.Ed.2d 443 (1984) (holding that criminal defendant must testify to preserve claim of improper impeachment with prior conviction) ("The [*in limine*] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). This is particularly true when the evidence is challenged as irrelevant or prejudicial; the considerations weighed by the court will likely change as the trial progresses. See Rosenfeld v. Basquiat, 78 F.3d 84, 91 (2d Cir. 1996) ("Unlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound and no real purpose other than form would have been served by a later objection."). We have also made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*. "[A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." Paoli I, 916 F.2d at 859; see also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 747 (3d Cir.1994) ("Paoli II"). Under these and similar circumstances, if a district court makes a tentative pre-trial ruling, it has the opportunity to "reconsider [its] in limine ruling with the benefit of having been witness to the unfolding events at trial." United States v. Graves, 5 F.3d 1546, 1552 (5th Cir. 1993).

Walden, 126 F.3d at 518 n. 10.

The Third Circuit has thus cautioned that "pretrial Rule 403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage.*"* In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig.*,* 916 F.2d at 859.

Accordingly, the principles which guide our consideration of motions *in limine* urge courts to exercise their broad discretion sparingly in this field, and avoid precipitous pre-trial rulings excluding evidence on relevance and prejudice grounds or otherwise unduly curtailing the parties' presentations of their case. It is against the backdrop of these guiding legal tenets that we consider the parties' motions *in limine*.

### B. Punitive Damages Under Pennsylvania Law

In considering the instant motion *in limine* we must consider two countervailing factors: First, under Pennsylvania law a determination of whether a party is entitled to punitive damages often turns on the facts of the case. Yet,

Pennsylvania law also sets an exacting standard for the award of punitive damages in tort cases. "Pennsylvania has adopted Section 908 of the Restatement (Second) of Torts, which provides that punitive damages may be 'awarded to punish a defendant for outrageous conduct, which is defined as an act which, in addition to creating "actual damages, also imports insult or outrage, and is committed with a view to oppress or is done in contempt of plaintiffs' rights." ... Both intent and reckless indifference will constitute a sufficient mental state.' Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 235 (3d Cir. 1997) (quoting Delahanty v. First Pa. Bank, N.A., 318 Pa. Super. 90, 464 A.2d 1243, 1263 (1983))." W.V. Realty, Inc. v. N. Ins. Co., 334 F.3d 306, 318 (3d Cir. 2003).

As the Pennsylvania Supreme Court has observed:

> The standard governing the award of punitive damages in Pennsylvania is settled. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984) (quoting Restatement (Second) of Torts § 908(2) (1979)); see also Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. See SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 704 (1991); Feld, 485 A.2d at 747-48; Chambers, 192 A.2d at 358. See also Restatement (Second) of Torts § 908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. Kirkbride v. Lisbon Contractors, Inc., 521 Pa. 97, 555 A.2d 800, 803 (1989);

> Restatement (Second) of Torts § 908 (1) ("Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."). Additionally, this Court has stressed that, when assessing the propriety of the imposition of punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." See Feld, 485 A.2d at 748; see also Martin v. Johns-Manville Corp., 508 Pa. 154, 494 A.2d 1088, 1097 n. 12 (1985) (plurality opinion).

Hutchison ex rel. Hutchison v. Luddy, 582 Pa. 114, 121-22, 870 A.2d 766, 770-71 (2005).

> In Hutchinson, the Pennsylvania Supreme Court also:
>
> [S]et forth the standard the courts are to apply when called upon to determine whether the evidence supports a punitive damages award on such a basis. Noting that Comment b to Section 908(2) of the Restatement refers to Section 500 as defining the requisite state of mind for punitive damages based on reckless indifference, this Court turned to Section 500, which states:
>
> § 500 Reckless Disregard of Safety Defined: The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. Restatement (Second) of Torts § 500.

Id. at 771. Noting that Section 500 set forth two very different types of state of mind as to reckless indifference, the Pennsylvania Supreme Court adopted the narrower

reading of this state of mind requirement when addressing punitive damage claims, concluding that "in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Id. at 772.

### C. **Motions *in limine* 27 and 9 will be Denied Without Prejudice to Renewal at Trial and We Will Prescribe a Procedure for Addressing these Issues at Trial.**

Guided by these general principles, we turn to consideration of the instant motions *in limine*. In addressing these motions, we acknowledge that evaluation of a punitive damages claim entails a very fact-specific assessment cast against an exacting burden of proof. While that exacting burden of proof may invite challenges to such claims, those challenges often are not amenable to pre-trial resolution but rather must await presentation of proof at trial. Therefore, court's frequently decline to grant such motions *in limine*, without prejudice to renewal of objections to punitive damages claims at trial based upon a fully developed factual record. See e.g., Botey v. Green, No. 3:12-CV-1520, 2017 WL 2536397, at *2 (M.D. Pa. June 9, 2017) ("In sum, Defendants ask this Court to make a determination prior to trial that no basis for the award of punitive damages exists and that, consequently, no reference by Plaintiff's counsel in his opening statement may be made to punitive damages. This the Court will not do."); Ponzini v. PrimeCare Med., Inc., 269 F.

Supp. 3d 444, 540 (M.D. Pa. 2017), appeal dismissed sub nom. Ponzini v. Monroe Cty., No. 17-3134, 2017 WL 8727421 (3d Cir. Dec. 19, 2017); Bailey v. B.S. Quarries, Inc., No. 3:13CV3006, 2016 WL 3411639, at *3 (M.D. Pa. June 16, 2016); Grosek v. Panther Transp., Inc., No. 3:07CV1592, 2009 WL 905035, at *3 (M.D. Pa. Apr. 1, 2009); Brillhart v. Sharp, No. 4:07-CV-1121, 2008 WL 11501565, at *1 (M.D. Pa. Nov. 17, 2008).

This is the course we will follow in the instant case. While we place plaintiff's counsel on notice of the exacting standard they must meet to sustain this claim, we will not endeavor to make a pre-trial determination of the viability of that claim. Therefore, we decline Shohola's invitation to entirely preclude punitive damages claims prior to trial. Instead, we will await the presentation of proof at the trial and will make a fully-informed decision regarding whether this claim may go to the jury based upon the evidence and guided by the arguments of counsel.

This decision, in turn, prescribes for us the path we should follow when addressing Shohola's motion to exclude any reference to its financial status from the trial of this case. It is well-settled that: "evidence regarding a defendant's assets is relevant to the issue of punitive damages." Johnson v. Fed. Exp. Corp., No. 1:12-CV-444, 2014 WL 805995, at *12 (M.D. Pa. Feb. 28, 2014) citing Forsyth v. Kleindienst, 700 F.2d 104, 106 (3d Cir.1983); Rahemtulla v. Hassam, No. 3:05–0198, 2008 WL 2247195, at *4 (M.D.Pa. May 30, 2008); Williams v. Betz, No. CIV.

A. No. 93–4426, 1996 WL 114815, at *3 (E.D.Pa. Mar.14 1996).Since we are not prepared to categorically exclude R.D.'s punitive damages claim prior to trial, we likewise are not prepared to categorically exclude evidence that may be relevant to that punitive damages claim, like proof of Shohola's financial status. However, we recognize that premature disclosure of this evidence could be unfairly prejudicial, particularly if we concluded that the conclusion of the plaintiff's case that R.D.'s punitive damages claim should not be submitted to the jury. In this setting, evidence of Shohola's financial status would not be relevant to any compensatory damages claim but could be potentially prejudicial since the jury might use Shohola's wealth, rather than R.D.'s provable injuries, as the measure of compensatory damages.

In the past courts have reconciled these competing concerns by bifurcating the trial of punitive damages claims and requiring the jury to first make a finding that punitive damages are appropriate before allowing the jury to receive evidence of Shohola's financial status, evidence which may be relevant to the amount of any punitive damages award. As this court has observed in the past:

> [P]rior to the court allowing evidence related to a defendant's financial condition, the factfinder must determine "the legal sufficiency of plaintiff's claim, a determination which must be made at trial." Waters v. Genesis Health Ventures, Inc., 400 F.Supp.2d 808, 813 (E.D.Pa.2005). In short, evidence of defendant's financial condition is not relevant until the factfinder concludes that the defendant's intentional conduct warrants an award of punitive damages. See McGrane v. Shred–It USA, Inc., No. 07–98, 2011 WL 1706777, at *2 (W.D.Pa. May 4, 2011). Accordingly, the court will . . . preclude [the

> plaintiff] from offering evidence or testimony of FedEx's net worth or revenue in . . . opening statement or at any other time in the presence of the jury until the jury reaches a verdict awarding punitive damages. See Waters, 400 F.Supp.2d at 813 (citing Williams, 1996 WL 114815, at *3); McGrane v. Shred–It USA, Inc., 2011 WL 1706777, at *2. If the jury concludes that punitive damages are appropriate, it is entitled to learn the value of the [the defendant's] assets, net worth, and general financial condition in order to determine the amount of the punitive damages award. See Rahemtulla, 2008 WL 2247195, at *4.

Johnson v. Fed. Exp. Corp., No. 1:12-CV-444, 2014 WL 805995, at *12 (M.D. Pa. Feb. 28, 2014). See Rahemtulla v. Hassam, No. CIV.A.3:05-0198, 2008 WL 247195, at *4 (M.D. Pa. May 30, 2008).

This is the path we will follow in the instant case. The defendant's motion is therefore granted in part and denied in part as follows: Testimony related to Shohola's financial condition will not be permitted in the plaintiffs' liability case in chief. If, however, jury concludes that punitive damages should be awarded, then evidence of the defendant's financial status will be allowed before the jury is asked to make a determination of the amount of punitive damages.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| "R.D.," | : | Civil No. 3:16-CV-01056 |
| Plaintiff, | : | |
| v. | : | (Magistrate Judge Carlson) |
| SHOHOLA, INC., | : | |
| Defendant. | : | |

## ORDER

AND NOW this 20th day of November 2019, in accordance with the accompanying Memorandum, IT IS ORDERED as follows:

1. While we place plaintiff's counsel on notice of the exacting standard they must meet to sustain a punitive damages claim, we will not endeavor to make a pre-trial determination of the viability of that claim. Therefore, Shohola's motion *in limine* to entirely preclude punitive damages claims prior to trial, (Doc. 329), is DENIED without prejudice to renewal at trial upon the close of the plaintiff's case.

2. Shohola's motion *in limine* to exclude evidence related to the financial status of the parties, (Doc. 310), is GRANTED in part and DENIED in part as follows: Testimony related to Shohola's financial condition will not be

permitted in the plaintiffs' liability case in chief. If, however, jury concludes that punitive damages should be awarded, then evidence of the defendant's financial status will be allowed before the jury is asked to make a determination of the amount of punitive damages.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
